ALABAMA GREAT SOUTHERN RAILROAD COMPANY *v.* ZACHARIAH HUNNICUTT.

[53 South. 617.]

RAILROADS. *Damages suffered. Moving cars. Code 1906, § 1985. Prima facie evidence. Rebuttal of presumption. Eye-witness unnecessary.*

Where a plaintiff makes out a *prima facie* case under Code 1906, § 1985, providing that in actions against railroad companies for damages to persons or property proof of injury inflicted by the running of the locomotives or cars of the company shall be *prima facie* evidence of the want of reasonable skill and care on the part of the servants of the company in reference to such injury:

(a) The defendant in order to overcome the statutory presumption must show to the satisfaction of the jury such circumstances of excuse as will relieve it from liability; and

(b) This cannot be done by mere conjecture; but

(c) It is not essential that defendant company shall produce an eye-witness to the accident, since the facts excusing it may be proved by circumstances.

FROM the circuit court of Lauderdale county.
HON. JOHN L. BUCKLEY, Judge.

Hunnicutt, appellee, was plaintiff in the court below; the railroad company, appellant, was defendant there. From a judgment in favor of plaintiff for $3,500, the defendant appealed to the supreme court. The opinion of the court states the facts.

*Catchings & Catchings*, for appellant.

In *Hicks* v. *Mobile, etc. R. R. Co.*, 91 Miss. 362, —— U. S., L. Ed. ——, it is said by this court that this section must be interpreted precisely as if it had been written thus: "Proof of injury inflicted by the running of locomotives or cars of such company shall be *prima facie* evidence of liability on the part of the company." The section referred to is Code 1906, § 1985. We shall not comment upon the broad difference between the statute as written and the interpretation which has thus been placed upon it by this supreme court, inasmuch as, for the purpose of our argument, it is immaterial whether the statute is to be construed as written or is to be interpreted as this court said it should be. In either event proof of injury inflicted by the running of locomotives or cars of a railroad company is made *prima facie* evidence of liability.

In the case of *New Orleans, etc. R. R. Co.* v. *Brooks*, 85 Miss. 275, in construing this statute this court said: "There is yet another principle of law, well settled in this state, which required the submission of the case to the jury. It was shown beyond peradventure that the injury was inflicted by the running of the train. This was *prima facie* proof of negligence, authorizing a recovery by plaintiff. To overcome this statutory presumption, it devolved upon the appellant to exculpate itself by establishing to the satisfaction of the jury such circumstances of excuse as would relieve it from liability. But this statutory presumption cannot be overthrown by conjecture. The circumstances of accident must be clearly shown, and the facts so proven must

exonerate the company from blame. If the facts be not
proven and the attendant circumstances of the accident
remain doubtful, the company is not relieved from liabil-
ity, and the presumption controls." Practically the
same view was set forth in the case of *Railroad Com-
pany* v. *Landrum,* 89 Miss. 409.

It will be observed that in the *Brooks case, supra,*
the trial court was requested to give the railroad com-
pany a peremptory instruction. While the assignment
of errors do not appear from the report of the case,
it is evident from the brief of the learned attorney of
record for the appellee that the question was argued in
this supreme court in the case cited as to what should be
the character of the testimony which would authorize
a court to take the case from a jury. He argued that
before a case could be taken from a jury the proof in-
troduced by a railroad company to overcome the *prima
facie* presumption created by the statute must be con-
clusive. The opinion of this court in the Brooks case,
begins by alluding to the fact that the lower court had
refused to grant appellant a peremptory instruction.
It then stated that the sole question before it was
whether, under any view of the case, accepting as true
and giving the most favorable consideration to the testi-
mony of the appellee, judgment could be sustained. In
other words, it impliedly stated that the question to be
as to whether, under the particular facts of that case,
the lower court should have taken the case from the
jury by a peremptory instruction. It was not intended
to hold, by this statement, that to overcome the statu-
tory presumption the circumstances of the accident must
clearly show that these circumstances could never be
shown by circumstantial evidence, but could only be
shown by the testimony of those who witnessed the ac-
cident and could therefore speak from personal knowl-
edge.

In the *Landrum case, supra,* it was also contended for the appellant that a peremptory instruction should have been given, and the question before this court, therefore, was whether, under the testimony the lower court should have taken the case from the jury. It was only intended to be held by that case that the question as to whether the *prima facie* presumption of the statute had been overcome could not be taken from the jury unless it was clearly shown how the injury occurred. There was no intention to hold, and there was no intention to hold in the Brooks case, that the *prima facie* presumption created by statute could not be overcome by circumstantial evidence but that there must be witnesses who saw the injury inflicted and who could speak exactly from personal knowledge.

It will be observed in the *Landrum case, supra,* that it was not said by the court that there was no evidence from persons who saw the injury inflicted and who could speak from personal knowledge; it was simply said that there was no evidence of a nature which could satisfy a court how the injury was inflicted, thus clearly recognizing that it is competent in all cases to have left it to the jury to say whether there be eye witnesses or not from all the evidence as to whether the *prima facie* case made by the statute had been met.

The court below acted in the case at bar upon the conception that the *prima facie* presumption of the statute could not be met by circumstantial evidence. But we contend that the law is that the appellant company is not liable, although it may not have been shown to the satisfaction of the jury the exact manner in which deceased was killed; if it had shown to their satisfaction that there was no negligence on its part, or, using the language of the instruction, that at the time of striking and killing the deceased, the train by which he was killed was in good condition and properly equipped, and

was being operated by the servants of appellant's company with reasonable care and skill.

If the statute is to be construed, as the lower court construed it by its instruction, then, we contend, that it was clearly unconstitutional. The construction adopted by the circuit court below deprives appellant of its property without due process of law, in violation of the Constitution of the United States, and particularly the 14th amendment.

If Code 1906, § 1985, means what the circuit court below holds it to mean, we think there can be no question as to its unconstitutionality as stated. The statute never intended to do more than establish a *prima facie* liability upon proof being made that the injury was inflicted by the running of the locomotive or cars of a railroad company. If it had gone further.and declared what the circuit court below holds that it means that this *prima facie* evidence could not be overthrown unless a railroad company could produce witnesses who saw the accident, and who could tell exactly how it happened so as to leave no room whatever for inference or deduction, the effect would be that it would make the evidence conclusive unless testimony of a certain kind were introduced to overthrow it. No matter how strong the proof might be that there was no want of reasonable skill and care on the part of the servants of the railroad company in reference to such injury, yet, if the statute had been written as we have suggested, this alleged *prima facie* evidence would be conclusive evidence unless it were met with evidence of a particular kind designated by the statute, namely, the evidence of persons who saw the injury and who could testify as to how it occurred.

If the statute had declared that proof of the injury should be conclusive evidence of the want of reasonable skill and care, according to all the authorities it would have been unconstitutional and void.

In some states statutes have been passed imposing absolute liability on railway companies for animals killed or injured on their tracks, regardless of negligence on the part of such companies. Such statutes are unconstitutional and void inasmuch as they violate the provisions of the Constitution which forbids the taking of property without due process of law. Such statutes would violate our state Constitution and also the Constitution of the United States. Elliott on Railroads, vol. 3, 113. We refer the court to the case of *Little Rock, etc. R. R. Co.* v. *Payne,* 33 Ark. 816. A statute of Arkansas provides that "All railroads which are now or may be hereafter built and operated in whole or in part in this state shall be responsible for all damages to persons and property done or caused by the running of trains in this state." The trial court interpreted this statute as imposing upon railroads absolute liability to pay for stock killed by its trains, and it withdrew from the consideration of the jury all questions of negligence on the one hand or of due care on the other. The supreme court of that state held that it was not within the power of a legislature to divest rights by prescribing to the courts what should be conclusive evidence. It was further said by the court that such construction of the statute would be to make all railroads insurers of the safety of all live animals in the state against injury; and would either take away from them the defenses which all other corporations and persons might by law set up; or make the killing of stock conclusive evidence of want of skill and due care, and conclusive evidence of negligence. See *Zeigler* v. *Railroad Co.,* 58 Ala. 594.

Our contention does not conflict with the holding of the Supreme Court of the United States, in *St Louis, etc. Railroad Co.* v. *Matthews,* 165 U. S. 1. In that case the court maintained the constitutionality of a statute making railway companies responsible in damages for property injured or destroyed by fire communicated by their loco-

motive engines. The opinion was elaborate, and we content ourselves by referring to it. Fire statutes, as will appear from that opinion, rest upon an entirely different rule. The court concluded its opinion by saying: ''The statute is not a penal one imposing punishment for violation of law, but it is purely remedial, making the party doing a lawful act for his own profit liable in damages to the innocent party injured thereby, and giving to that party the whole damages measured by the injury suffered.''

The theory is that if a railroad is constructed in proximity to the property of others and its locomotives set fire to their property, they being entirely innocent, it is competent to require by statute that they shall be compensated. It will be observed from the opinion in that case that it has no reference to injuries to stock or trespassers, or to persons generally.

The investigation and determination of the question of liability is purely a judicial one. The courts can not be hindered by legislation in the discharge of their duty in the effort to determine the truth of issues before them. The legislature may, it is true, make certain facts *prima facie* evidence of liability, but it can not preclude the courts from investigating the whole question and determining it upon such evidence as may be satisfactory to them whether it be satisfactory to the legislature or not. The legislature can not declare that certain specific facts, or the absence of certain facts, shall establish conclusive evidence as to liability. Wigmore on Ev. 1672, also § 1353.

If the legislature may constitutionally declare that *prima facie* evidence can not be overcome unless the defendant can produce witnesses who can testify as to how the accident or injury occurred, then it must be manifest that the jury is not left free to decide, and it can not be said that the defendant has voluntarily failed to introduce evidence to the contrary. The defendant

should be left free as to the introduction of any evidence, it being for the court to decide whether evidence offered by it is competent, and for the jury to decide whether the evidence offered by him, if declared to be competent, is sufficient in their judgment to overcome the *prima facie* case made by the statute. *Peoples* v. *Rose,* 69 N. E. 765; *Meyer* v. *Berlandi* (Minn.), 12 Am. St. 667; *Missouri, etc. R. R. Co.* v. *Simonson,* 68 Pac. 653; *Railroad Co.* v. *Paine,* 33 Ark. 816; *Wantlan* v. *White,* 19 Ind. 470; *Chicago, etc. R. R. Co.* v. *Minn.,* 134 U. S. 418.

We insist that the statute creates only a *prima facie* case against a railroad company, and that it is at liberty to introduce evidence of any sort which · is competent under the rules of evidence, which might tend to overcome this *prima facie* case, and that it is not necessary in order to overcome it, that the evidence shall show exactly and precisely how the injury occurred.

The construction given the statute by the circuit court below makes the whole question of liability hinge upon the ability of a railway company to produce specific evidence showing specifically how the injury occurred. The investigation and determination of such a question is purely judicial; and the courts are entitled to pass upon such a question according to their own views as to the competency and sufficiency of the testimony.

The Alabama statute is substantially the same as ours, though in different phraseology. The Alabama Code, § 4476, is as follows: "When any person . . . is killed or injured . . . by the locomotive or cars of a railroad, the burden of proof, in any suit brought therefor, is on the railroad company to show a compliance (with three preceding sections), and that there was no negligence on the part of the company or its agents."

It will be seen that the Alabama statute makes a *prima facie* case of negligence and placed the burden of proof on the railway company to show the absence of negligence. Our statute does nothing more than this.

This Alabama statute is fully construed by the supreme court of that state in the case of *Carlisle* v. *Alabama, etc. Railroad Co.,* 52 South. 341. The court very clearly held in that case that where the only evidence for the plaintiff was that of circumstances, showing that deceased was killed upon the track, the statutory presumption was fully rebutted by the testimony of the servants of the railroad company, that they were looking and saw nothing upon the track, and knew nothing whatever as to how deceased was killed.

*A. S. Bozeman,* on the same side.

The appellant company was unable to produce any eye witnesses to the death of Hunnicutt, but introduced testimony to show that the train by which Hunnicutt is alleged to have been killed was properly equipped and carefully managed, and that it was not guilty of any negligence in the operation of the train at Kewanee at the time of the accident.

The verdict of the jury against the company was predicated on the fact under instructions of the court that the defendant company was unable to produce any eye witness to the death of the young man; and that in the absence of such witnesses who could testify as to how deceased was killed, then it was the duty of the jury to find for plaintiff.

It is a material fact that there was no duty connected with the position of night operator which called Hunnicutt to the tracks when this train passed, or at any time; but that his duty called him to be inside the depot and inside the operator's office from which position it was his duty to manipulate the signal board maintained at the telegraph office.

The main injury and the one which doubtless caused the death of the deceased was a blow on the top of the head crushing the skull as if he had been struck with a hammer and which made a clean cut according to some

of the testimony. Young Hunnicutt's body was found lying between the depot platform and the railroad track about three feet north of a point opposite the depot door, his head being toward the eastern direction in which the train was going, and his body lying on the track parallel with it. No part of his body was across the rail, but the entire body was lying between the rails and the platform and clear of the track so that the train, in backing down toward the depot, did not touch it. One arm and one leg were doubled up under him as if they had been broken. A subsequent examination of the dead body revealed the fact that the front part of his head was badly crushed; the left ankle was dislocated; the right leg was broken and cut above the knee; and the right arm was nearly off at a point near the shoulder.

Hunnicutt had been drinking beer during the day preceding his death. One witness testified that early Thursday morning he drank a bottle of beer with Hunnicutt. At that time Hunnicutt had placed two bottles of beer in a bucket filled with ice water. Later in the day Hunnicutt came from the depot to this witness' store and got some ice and carried it back to the depot. In a short while Hunnicutt returned and gave witness several bottles of beer requesting that it be kept on ice. After this witness did not see Hunnicutt until late in the afternoon when Hunnicutt called to get the beer left with witness. It was shown that Hunnicutt had in his possession four dozen bottles of beer on this day, and when he was killed, none of it could be found.

The appellant company met the *prima facie* and clearly demonstrated by the testimony that there was no want of reasonable skill and care on the part of its servants in reference to Hunnicutt's injury. The only negligence charged in the declaration was the running of the train at a high rate of speed through the station at Kewanee and over the dirt road crossing, and the strik-

ing and killing of the night operator, Hunnicutt, who was alleged to be at the time upon or near the track in the discharge of his duty. .

The undisputed testimony clearly shows that the appellant railroad company had a right to run this train through the station of Kewanee, a small station, at a high rate of speed, this town being unincorporated; that the train passed Kewanee at about 2:30 o'clock a. m. every night; and that Kewanee was not a stop for this train, neither a regular stop nor a flag station, but that the train was nightly run through this station at a rate of speed varying from forty to fifty miles per hour.

The undisputed testimony further shows that at the time this train passed Kewanee there was no duty which called Hunnicutt to be on or near the railroad track; but on the contrary, if he was on or near the railroad track when this train approached and passed the station he was there in violation of his duty because it was his duty to be in the operator's room on the inside of the depot, and from such position to change the signal light from "stop" to "proceed," after the train had whistled for the station and before the rear car passed the depot.

The only thing that could have caused him to be outside the office would have been for the purpose of delivering to the engineer and the conductor what is known as a "19 order," but the testimony shows clearly that there was no such order for delivery on that occasion.

If Hunnicutt had been standing upon or near the track and had been struck by the engine, he would have been knocked over on the platform or on the track, and most probably the wheels of the train would have passed over his body.

The trial court erroneously instructed the jury that if they believed from a preponderance of evidence that the deceased met his death by the running of a train of the appellant railroad company, then, in order to relieve

itself from liability, the company must show by evidence how the killing occurred; and further, that no amount of conjecture, speculation or surmise as to how the killing occurred would relieve the railroad company from liability; nor will the fact that the employes of the railroad company did not see deceased, and that the said employes were careful in the operation of the train or keeping a proper lookout, relieve said railroad from liability.'' By this instruction the trial court plainly told the jury and announced the law to be that the only way in which the defendant company could meet the burden of the *prima facie* statute was by showing in evidence how the killing occurred; and that in the absence of such proof as to the exact manner of the killing, proof that the employes of the railroad company did not see the deceased, and proof that such employes were careful in the operation of the train, and that they were keeping a proper lookout, would amount to nothing. We submit that this instruction goes far beyond the meaning of Code 1906, § 1985, and it is a construction of that statute which is wholly unwarranted; and that the statute so construed deprives the defendant railroad company of the constitutional right which it has to the equal protection of the law given to other persons, and thereby takes its property without due process of law.

The statute places upon a railroad company the burden of proof only, which is the burden of proving that it was not guilty of a want of reasonable skill and care on the parts of its servants.

In many cases, as in the case at bar, the very fact that the injury was not seen, where it appears that the servants of the company were exercising reasonable care in keeping a lookout, would show that the servants of the company were not guilty of any negligence in that respect, and would warrant the jury in finding that the injured party was not in a position where he might or should have been seen by the servants of the com-

pany. And if the injured party was not seen near in a position of peril, under these circumstances, the servants of the company could not be charged with any negligence in running over and striking him.

*Ethridge & Ethridge,* for appellee.

Before the enactment of Code 1906, § 1985, the law placed upon the plaintiff the burden of proof of the killing of deceased by the defendant railroad company, but required that the plaintiff prove negligence on the part of the company. The legislature in its wisdom and good judgment changed this rule to the extent set forth in the statute. The legislature evidently had in mind just such cases as the case at bar. It cannot be doubted that Hunnicutt was killed by the "running of defendant's locomotive and cars," but yet the engineer and fireman did not see him and could not explain how the death occurred. In other words, they could not explain the manner of his death nor exculpate the defendants from blame, as is required under Code 1906, § 1985, and the construction placed upon this Code section in the case of *Brooks* v. *Railroad Co.,* 85 Miss. 274, upholds our contention. See, also, *Landrum* v. *Railroad Co.,* 89 Miss. 409; *Combs* v. *Mobile, etc. Railroad Co.,* 46 South. 168; *Easley* v. *Railroad Co.,* 50 South. 491.

By an examination of the above cited Code section and cases cited, it is evident that the legislature, in enacting that statute, did so with a view to forcing railroad companies to explain how the injury was inflicted, and at the same time exculpate itself from blame, recognizing the hardship imposed upon the plaintiff in matters like this, where proof is peculiarly in possession of the defendant. The cause of deceased's death cannot be questioned. He was seen about eleven o'clock on the night of his death by the train crew of the train he reported as passing there. These witnesses testify that as the train passed they saw some one standing inside

the station where Hunnicutt usually stood with his hands on the rope of the signal board. This was the last train passing there between that time and the time the passenger train passed that killed deceased. There can be no doubt that this train killed deceased; and from the position of the body when found, and the nature of the wounds, it is certain beyond every doubt that he met his death by the running of the cars and locomotive.

In the *Landrum case, supra,* the proof was that Landrum was found beside the track about eight o'clock at night. His dead body was found some distance from a station, and there was no evidence to show when or how he met his death. The court in this case said: ''Since the evidence clearly showed that Landrum was killed by the running of the cars,'' etc. While the proof in the Landrum case was very strong and thoroughly warranted this statement, yet, in the case at bar, the facts are much stronger than in that case.

If Hunnicutt was killed by the appellant's train, then the record presents an utter absence of any proof even tending to show how he was killed, or in exoneration of appellant from liability. On the other hand, the facts show a plain disregard for human life, or property rights. Here we have a case of Hunnicutt being run down and mangled by one of appellant's trains at a place and under conditions that do not offer the slightest excuse or justification. The proof is that the engineer could see where the deceased was struck and killed or where his body was found between one-quarter to a half of a mile, and that the headlight on the engine was very bright and lighted up the platform and track for that distance; and that any one on the track within that distance could be seen. Yet he testified that he did not see deceased upon the track; the fireman on the engine testified that he did not see deceased. The testimony of these two witnesses leads to one of two conclusions: they either were not looking up the track ahead of the engine,

or they did see deceased and refused to testify as to the circumstance surrounding his death. Under either state of facts, defendant is liable. The engineer testified that he was running at a very high rate of speed through Kewanee, and never blew his whistle or rang the bell until the train approached within one hundred feet of the crossing, just west of the depot.

Kewanee was a telegraph station and a regular stopping place for all trains, except fast trains like the one which we contend killed deceased; and this was a point where all trains whether fast or slow usually stopped for orders, but the facts show that when this train entered the limits of the depot it was running at the rate of fifty miles per hour and kept this speed until the engine reached a point about one hundred and fifty feet from the depot. When the train came within one hundred feet of the depot the engineer applied his brakes because the signal was displayed requiring him to stop. The rate of speed the train was being run and the fact that the engineer was running his train over switches in the yard limits show a total disregard of all care. He should have checked the speed of his train upon entering the yard limits so as to have it under perfect control.

The record fails to show how the injury that caused Hunnicutt's death occurred, and unquestionably fails to exonerate the appellant railroad company from blame. On the other hand it is shown to be a clear case of negligence on the part of the appellant's servants. If the engineer or the fireman had been at their respective posts of duty, as the law required, at least, of the engineer, then Hunnicutt would have been seen by the engineer at least a quarter of a mile with the aid of the powerful headlight on the engine.

In the absence of an explanation of the manner in which the injury was inflicted by the running of the locomotive or cars, appellee was entitled to a verdict. The appellant railroad company offered no evidence showing

clearly how deceased was killed, and exonerating it from liability. Unless these requirements under Code 1906, § 1985, were fully met, the appellee was entitled to a verdict, and the appellant cannot escape on the theory that the engine and machinery were in reasonably good order, nor upon the statement of the engineer that he was looking and did not see deceased. This is no compliance with the present law. This would not have excused it under the law as it was before the enactment of the above cited Code section. The deceased was evidently where he could have been seen if the engineer had been looking up the track as he should have done. This Code section and the amendment were enacted to cure the defects in the law as it was then, and to hold that the proof here presented satisfied the requirements of the present law, makes the law a nullity. We find here a case measuring up to and contemplated by the provisions of Code 1906, § 1985, in which the railroad above every one else knew, and were required to show clearly how the injury was inflicted.

Appellant seems to rely on the unconstitutionality of Code 1906, § 1985. We feel certain that this contention must fail, as there is no sound reasoning for such contention. Statutes of the same character as the one in question have been attacked as unconstitutional, but the courts, in the vast majority of cases, have upheld them. Appellee does not claim that on proof of the inflicting of an injury the railroad company is liable. There is not a suggestion of such a theory in the instructions. The only thing we contend for and the only thing the trial court has said in any of the instructions was in the following instruction given appellee: "The court instructs the jury for plaintiff, that if they believe from a preponderance of the evidence in this case that plaintiff's son, Zack Hunnicutt, Jr., was killed by the running of a train of the railroad company, then the law presumes that the railroad company negligently killed him,

and before it can escape liability it must show by competent evidence and by a preponderance thereof, how Zack Hunnicutt, Jr., was killed by the train. The jury are further instructed that the railroad company cannot meet this presumption of negligence by mere conjecture, speculation, or surmise, but it must meet it by testimony.''

The instructions for appellee are based on Code 1906, § 1985; *Landrum* v. *Railroad Co.,* 89 Miss. 409; *Brooks* v. *Railroad Co.,* 85 Miss. 274; *Combs* v. *Railroad Co.,* 46 South. 168; *Easly* v. *Railroad Co.,* 50 South. 491.

The trial court made doubly plain the meaning of the law-makers in enacting this above cited Code section into our laws, and the construction of this statute in the Landrum case. The court in that case said: ''Since the evidence clearly showed that Landrum was killed by the running of the cars, the statute imposed upon the railroad company liability unless the railroad met the burden imposed by the statute and showed clearly the facts attending the injury, and by such showing exonerated itself.''

Code 1906, § 1985, does not say that upon proof of the infliction of the injury by the running of the cars that the railroad company is liable, but it makes out only a *prima facie* case on behalf of the plaintiff, and places merely the burden of proof upon the railroad company of showing clearly how he was killed, and also of exonerating itself. There is nothing in this statute requiring defendant to show clearly how the injury was inflicted and of exonerating itself from blame. That would be repugnant to the Constitution of the United States in reference to taking property without due process of law.

Code 1906, § 1985, simply makes the infliction of the injury *prima facie* evidence of want of reasonable care and skill on the part of the servants of the railroad company; and the decisions so construe this statute that if the railroad company can exonerate itself from blame

by showing how the injury was inflicted and that it was not to blame, it has that privilege. This they must do on proof of the infliction of injury by the running of its cars, and this it ought to be made to do or be held liable. If the engineer did not see this young man when he struck and mangled his body so badly that he died, it was because the engineer was not looking ahead as he testified and endeavored to make the jury believe he was. It is an undisputed fact that the engine had a very bright headlight which made the track and platform at the point where the injury was inflicted as bright as day; and this condition was true for between a quarter to a half mile as the engine approached the station. There is no doubt that deceased was struck at the point where his body was found; and it is equally true that there was nothing to obstruct the engineer's view of the whole track and platform.

According to the engineer's own testimony, he was guilty of negligence in the way he ran and controlled the engine on that occasion. A man was run over and killed in front of the depot, with the surroundings lighted up so that one could see everything in and around the depot and track, and for the engineer to say he was looking at the track and did not see any one, is too preposterous to argue. He did see him if he was looking, as he says he was, and if it is true that he did not see him, then he was not looking. In either case the railroad company and the engineer are liable. Under the law as it stood prior to the enactment of Code 1906, § 1985, the railroad company would escape liability unless plaintiff could find some one who saw the accident and make out a case which would permit him to stand before the jury and force the railroad company to put the engineer, Frazier, on the stand. The legislature foresaw this, and Code 1906, § 1985, is the remedy for the former hardship placed on litigants with the railroad company in cases involving this question of negligence.

There is no doubt, under the many decisions and defini-
tions of "due process of law," that the defendant had
an equal showing with plaintiff. There was a regularly
empaneled jury, presided over by a competent judge; it
had an opportunity to be heard by counsel, and to ex-
plain how the accident occurred and to exculpate itself
from liability.

McLain, C.

This is an appeal from a judgment rendered in the
circuit court of Lauderdale county against the Alabama
Great Southern Railroad Company for the killing of
Zachariah Hunnicutt, Jr., son of the plaintiff, by a
passenger train of defendant. The record shows that
Zachariah Hunnicutt, Jr., on the 24th day of July, 1908,
was killed by a passenger train of defendant at Kewanee,
Mississippi. This was known as the fast train, and it
left Meridian for Birmingham at 2:02 a. m., and passed
Kewanee at 2:25 a. m. Kewanee was a small unincorpo-
rated village, and was not a regular stop, and this train
in question was not scheduled to stop there. Hunnicutt
was a young man, and was telegraph operator at this
little station. The railroad track was straight at this
point for a distance of seven hundred yards west and
three-fourths of a mile east. The depot was on the south
side of the track, and had a platform fronting to the
railroad for the entire length of the building. It was con-
structed by sills or timbers, eight by ten, being placed
in line ten feet from the building, and the space between
timbers and depot filled up with dirt and gravel. This
formed the floor of the platform. The outer edge of the
platform was something over three feet from the rail-
road track.

The engineer states that, as he approached the station
on the night in question, his train was running at the
rate of forty or forty-five miles an hour, and that he
was on the lookout for the light on the signal board

at the depot (in charge of the deceased) to change from
red light to white light, which change would have au-
thorized him to run on without stopping. He states that
the railroad track and surroundings at the depot were
plainly visible; that he sounded the whistle several
times, but the light did not change from red to white.
It then occurred to him that possibly the agent, Hunni-
cutt, had what is commonly called in railroad circles an
"order No. 19" to deliver to him or conductor, which
order is always delivered without stopping the train,
by putting the order on some kind of a device, and plac-
ing that on the end of a pole, which is held out by the
agent and taken in by the fireman or conductor reaching
out for it. The rules require the agent, in performing
this duty, to appear on the outside with a blue light.
The engineer stated that when he saw the agent did not
appear, nor had not changed the red light to white light
on the signal board, that it then became his duty under
the rules of the company to stop his train, which he at
once did, stopping about one hundred and fifty feet
east of depot. The train was then pushed back to the
depot, and the conductor states that, while he was stand-
ing on the platform of one of the cars, he discovered the
body of a human being lying on the side of the railroad
track, almost in front of the door of the depot. The
body was lying between the platform and the railroad
track; the distance between the edge of the platform
and the railroad track being a little over three feet. The
body was lying on its face, parallel with the railroad
track, with head lying east. The conductor states that
he turned the body over, and discovered that it was the
body of Hunnicutt, the agent, and that he (Hunnicutt)
gasped for breath once or twice, and that his body was
warm. The front part of his head was crushed in, or,
as some of the witnesses put it, "caved in." His right
arm and left leg were broken. Immediately the crew
began to investigate how he was killed. The engineer

testified that he examined his engine thoroughly, and could find no signs indicating that the engine struck him, and the car was examined its entire length, and the agent upon the baggage car testified that he found a small spot on the sill or beam of his car that looked like brains.

The position of the body and the character of the wounds upon same indicated that he was not struck by the engine. The engineer and the fireman both testified that they were on close watch of the track and depot surroundings as they approached the same, and that they did not see Hunnicutt or any one else. They state that they were specially alert and watchful by reason of the failure of the agent to give any signal whatever. It is further in evidence that on Wednesday evening late, preceding the next Thursday night on which this accident occurred, the agent, Hunnicutt, received by express a case of beer containing forty-eight bottles. He took possession of same, and was seen drinking this beer along through the next day. He treated some of his friends. He had a lot of this beer on ice late Thurday evening. While he was seen drinking, no one testified that he was drunk. After his death, forty-seven empty beer bottles were found. It was shown that he was alive at 11:47 that night, as he reported the passing of a train at that time to the train dispatcher. The crew of that train also testified that they saw a man in the office as they passed. It was further shown that no No. 19 order, or other order, was found on his desk, and the train dispatcher testified that he had not given any such order, or any order of any kind. It was shown that he had no duties to perform on the outside of the depot at the time the accident occurred; that his whole duty at that period of time required his presence in the office. The signal board was operated from his office.

These are the leading facts in the case. From the record, it clearly appears that Hunnicutt was killed by the running of the train of defendant at the time and

place shown in the evidence. Indeed, this is not denied. This was *prima facie* proof of negligence, authorizing a recovery by plaintiff. "In all actions against railroad companies for damages, done to persons or property, proof of injury inflicted by the running of the locomotives or cars of such company shall be *prima facie* evidence of the want of reasonable skill and care on the part of the servants of the company in reference to such injury. This section shall also apply to passengers and employes of railroad companies." Code 1906, § 1985. "To overcome this statutory presumption, it devolved upon the appellant to exculpate itself by establishing to the satisfaction of the jury such circumstances of excuse as would relieve it from liability. But this statutory presumption cannot be overthrown by conjecture. The circumstances of the accident must be clearly shown, and the facts so proved must exonerate the company from blame. If the facts be not proven, and the attendant circumstances of the accident remain doubtful, the company is not relieved from liability, and the presumption controls." *New Orleans & Northeastern Railroad Company* v. *Brooks,* 85 Miss. 274, 38 South. 41. Such is the burden imposed by the law upon the defendant. It has placed the burden on it to clear up the situation. Has the defendant met this burden or liability imposed by the law? In the outset, we will state that to do this it is not absolutely necessary, as has been intimated or suggested in the record, that an eyewitness should be produced to testify that he saw the accident in any or all of its details; but that fact may be proven by circumstances. In other words, the *prima facie* presumption created by the statute can be overcome by circumstantial evidence; but it should be convincing, full, and complete.

It clearly appears from the record—indeed, it is not disputed—that the train and its appliances were in good order, that the engineer was competent and diligent, and that the train on the occasion in question, was carefully

handled. The engineer states that as he approached the station he did not see the deceased on the track or elsewhere, and that he was on a close watch for the signal board, which was then being operated, or should have been, by the deceased. The fireman also testifies to the same thing. Failing to receive any signal or information from the signal board or in any other way, he brought his train to a stop a short distance beyond the depot east. Then backing his train to the depot, to ascertain the reason or cause of the failure of the agent (deceased) to give the proper signal, the agent was found dead, under conditions and circumstances as hereinbefore described. From the testimony it is clear that he was not killed by the engine, but was struck by some other part of the car, after the engine, tender, and several cars had passed where his body was found.

Taking these physical facts and circumstances in connection with the testimony of the engineer, fireman, and conductor, it shows conclusively that he (deceased) was beyond the sweep or path of the train when the engine and several cars passed. Evidently, to have been struck and killed by a car in the rear of the engine and these several cars, he must have, in the very nature of things, advanced in some way towards the running train. This was negligence on his part, and that, too, whether he was conscious or unconscious, drunk or sober, awake or partly asleep. It occurs to us, after taking into consideration the freedom with which he drank beer on that day, and from the indisputable fact that he was absent from his post of duty at this important moment, that the most reasonable theory is that the unfortunate young man was asleep on the edge of the platform or elsewhere when the train first approached, and that the roar, jar, and vibration of the train awoke him, and that he suddenly arose, and in his confused mental condition came in contact with the moving cars and was killed. But it may be said this is merely a conjecture

or theory. We do not think that the evidence in the case and the physical facts here shown stop at mere conjecture as to how the deceased was injured. They go far beyond that. In our judgment, they clearly show that the injury was not inflicted by any want of ordinary care upon the part of the defendant, but was due solely to the contributory negligence of deceased.

Indeed, the physical facts corroborate the testimony of the engineer and other witnesses so strongly, and we are driven to the conclusion that this deplorable accident was attributable to the want of due care on the part of deceased, and not from negligence on the part of defendant railroad company.

*Reversed and remanded.*

PER CURIAM. For the reasons set forth above by the Commissioner, the judgment is reversed, and the cause remanded.