# Smith *v.* Illinois Central R. Co.

May 12, 1952.

No. 38352 (58 So. (2d) 812)

Henley, Jones & Woodliff, for appellant.

Byrd, Ricketts & Wise, for appellee.

**Kyle, J.**

The appellant, Fred Douglas Smith, a minor of the age of seven years, plaintiff in the court below, sued the appellee, Illinois Central Railroad Company, defendant, in the Circuit Court of the First Judicial District of Hinds County, in an action for damages for personal injuries alleged to have been sustained when the car wheels of one of the defendant's railroad trains ran over the plaintiff's right

foot as the train was proceeding northwardly along the defendant's railroad track near the Jackson Fertilizer plant, in the City of Jackson, on February 23, 1951. The case was tried before a jury, and at the conclusion of the testimony the court directed a verdict for the defendant. The plaintiff thereupon filed a motion for a new trial, which was overruled by the court, and from the final judgment entered in favor of the defendant the plaintiff prosecutes this appeal.

The pleadings consist of a declaration in three counts and an answer. The first count of the declaration was based upon the prima facie railroad statute, Section 1741, Code of 1942, and charged in general terms that the plaintiff's injuries were proximately caused by the negligent operation of the defendant's train. The second count was based upon the playground theory of negligence, and in that count the plaintiff alleged that the place where the injury occurred was a place where the children of the neighborhood were accustomed to congregate and play, and that this fact was known to the defendant, its agents and servants, and that it was the duty of the defendant to exercise a high degree of care and to keep a lookout to avoid injury to the plaintiff and other children playing upon the defendant's right of way, and that the plaintiff was injured as a result of the defendant's negligence in failing to keep a proper lookout for the plaintiff and other children along that part of the defendant's right of way which was used as a playground. The third count was based upon the attractive nuisance doctrine, and embodied also the playground theory mentioned above.

The defendant in its answer denied that the plaintiff's injuries were proximately caused by any acts of negligence on the part of the defendant, and the defendant denied all of the allegations contained in the plaintiff's declaration relating to the use of a part of its right of way as a playground for children and all allegations made by the plaintiff to support his charge of negligence

under the playground theory and the attractive nuisance doctrine.

There is no dispute as to the fact that the plaintiff was injured by one of the defendant's trains, which had left the defendant's railroad yard in the City of Jackson about noon on February 23, 1951, and was proceeding northwardly along the defendant's railroad track near the Jackson Fertilizer Company plant at the time the plaintiff was injured. There was apparently only one eyewitness to the accident, a colored boy, whose name was Bilbo, but who is referred to in the record as Bill; and Bilbo had left Jackson soon after the date of the accident and was not available to testify as a witness during the trial.

Ora Lee Smith, the plaintiff's mother, testified that she lived on Neatum Street, in the City of Jackson, about two blocks from the railroad tracks, and that she was at home washing when Bill brought the message that Fred Douglas had been injured. She sent her older son, Mose Ward, and Bill to the railroad track to bring Fred Douglas home, and when the boy was brought in she found that his foot was badly crushed and bleeding profusely. She called a doctor and made arrangements to have the boy taken to the hospital. The doctor operated on the foot that night, and half of the foot was amputated. Ora Lee stated that she later visited the scene of the accident and found blood and a part of Fred Douglas' shoe on the track close to the steel rail. She also observed that there was a trail of blood from the place where the boy had been injured to the place on the bank where Mose and Bill had found him. She stated that the child had slipped away from home to play, and that she did not know where he was until she received the news of the accident. She testified that she had warned the child several times against the danger of playing on the railroad track, and that she never knew that he played on the track.

Mose Ward testified that he was at home with his mother when Bill came in and told them about the acci-

dent, and that he and Bill went down to the railroad embankment and carried Fred Douglas home. Mose testified that the flesh was mashed off of Fred Douglas' foot and that the bones were exposed. Aaron Mathis, who was also a brother of the plaintiff, testified that children were accustomed to play on the track and along the railroad embankment and dug caves in the embankment; that the railroad employees saw them and did not make them quit; that his little brother, Fred Douglas, caught some crawfish down by the side of the ditch near the track. Aaron was working in the country at the time of the accident, but he and Mose visited Fred Douglas at the hospital on Sunday. In answer to a question asked him on cross-examination by the defendant's attorney, he stated that Fred Douglas did not tell him anything about the accident, but that his big brother did tell him. He was then asked the question, "What did Douglas tell you?" and his answer was, "He did not tell me anything. He told me he was down there trying to catch the train," and that he slipped and fell. The witness stated that was the first time Fred Douglas had ever hopped the train. John Henry Anderson testified that he was 13 years of age, and that he had played with other children in the railroad boxcars on the switch track and up and down the railroad embankment. He stated that when a passenger train went by he and the other children would stand on the hill and wave at the engineer and fireman; and he said, "I used to hobo on the train, but I did not go far." He said that other boys did the same thing, but that he never saw Fred Douglas playing on the railroad tracks. Earline Jones testified that she lived in a duplex at the end of Neatum Street; that the area was thickly populated; and that children living in the community were accustomed to play on the railroad embankment and on the railroad crossing and dug caves in the railroad embankment; and that there was a path across the railroad right of way near the point where the plaintiff was injured which was used by people living in the neighborhood.

R. L. Smith, the railroad conductor in charge of the train, was called as a witness by the plaintiff and testified that the train which caused the injury left Jackson about noon headed northwardly toward Yazoo City; that the train was a long freight train, 106 cars in length. He stated that Negro children were accustomed to play on both sides of the railroad track in the area where the accident occurred. He stated that the train was running about 8 or 10 miles per hour when it passed the point where the plaintiff was injured; that he was in the caboose making out his reports at that time; that the flagman was in the caboose with him; and that the engineer, fireman and brakeman were on the engine.

At the conclusion of the plaintiff's testimony the defendant made a motion for a directed verdict, which was overruled by the court.

S. E. Livingston, the engineer, testified that he was seated on the right-hand side of the engine, and was keeping a lookout when he passed through the densely populated area where the plaintiff was injured; that there was no one on the track; and that he did not strike anyone to his knowledge. He saw some children along the embankment on the east side of the track. They were screaming and jumping up and down, like children will do when a train passes. He never saw any of them leave the embankment and go toward the tracks, and he did not know that the accident had happened until he returned to McComb the next day. He testified that the bell was ringing as the train proceeded northwardly, that he did not know how the child was injured; that the children whom he saw were not in a dangerous position.

The locomotive fireman testified that he kept a lookout as he always did and did not see anyone on the track when the train went north on February 23, and that he did not see any colored children playing on the embankment. The brakeman testified that he was seated on the brakeman's seat on the left-hand side of the engine, reading his orders and watching the track and the cross-

ings; that he did not see any children along the track the day the accident occurred, and that the train did not strike anybody so far as he know. On cross-examination he stated that he had watched the children at times play on the bank, but had not seen them on the track. The flagman testified that he was on the rear platform when the train left the station at Jackson, but at the time the train reached the fertilizer plant he was inside the caboose reading orders; that he saw no one jump off or on the train, and that he saw no one hurt. He inspected the train that day before it left the station and everything about the train was in good order. He stated that he knew that children played on the railroad embankment.

The defendant offered as a witness Miss Frances Yoste Lever, a court reporter, who was permitted to testify, over the objection of the plaintiff's attorneys, that she had gone to the hospital with the defendant's claim agent the day after the accident occurred, and had taken a statement from Fred Douglas Smith while he was in the hospital, and that the child had stated in answer to the claim agent's question that ''he was trying to hop a train, said that some little boy told him to do it; said the little boy's name was Bill, Bill told him to hobo.'' The yardmaster testified that he had never received any report that children were accustomed to play in the boxcars on the side track in the area where the accident occurred, or on the railroad right of way, as testified to by some of the plaintiff's witnesses.

The record shows that the land on both sides of the railroad track near the point where the accident occurred was several feet higher than the railroad tracks.

The appellant's attorneys in their brief argue three main points on this appeal as grounds for reversal of the judgment of the lower court: (1) That the appellant made out a prima facie case of legal liability under the statute, by showing that the appellant's injury was caused by the operation of one of the appellee's trains, and that the appellee's proof was insufficient to show how the injury oc-

curred and to overcome the statutory presumption of negligence in the operation of the train; (2) that the appellant was entitled to recover damages under the "attractive nuisance doctrine", which the appellant contends is applicable when the railroad company permits its right of way to be used as a playground for children; and (3) that under the railroad playground rule the appellant made out a case which should have been submitted to the jury.

We shall discuss these three points in the order in which they have thus been presented in the appellant's brief.

Section 1741, Code of 1942, provides that proof of injury inflicted by the running of engines, locomotives or cars of any railroad company shall be prima facie evidence of the want of reasonable skill and care of such railroad company. And under this section when proof is made that an injury has been inflicted by the running of a railroad engine or cars, to overcome the statutory presumption of negligence the railroad company must show the facts and circumstances under which the injury was inflicted.

In the case of New Orleans & Northeastern Railroad Company v. Brooks, 85 Miss. 269, 38 So. 40, 41, the Court in discussing the effect of this statutory presumption said: "It was shown beyond peradventure that the injury was inflicted by the running of the train. This was prima facie proof of negligence, authorizing a recovery by plaintiff. To overcome this statutory presumption, it devolved upon the appellant to exculpate itself by establishing to the satisfaction of the jury such circumstances of excuse as would relieve it from liability. But this statutory presumption cannot be overthrown by conjecture. The circumstances of the accident must be clearly shown, and the facts so proven must exonerate the company from blame. If the facts be not proven and the attendant circumstances of the accident remain

doubtful, the company is not relieved from liability, and the presumption controls."

In the case of Alabama Great Southern Railroad Company v. Hunnicutt, 98 Miss. 272, 53 So. 617, the Court held, however, ██ to meet the burden of proof imposed by the prima facie statute it was not absolutely necessary that an eyewitness be produced to testify that he saw the accident in any or all of its details, but that the facts surrounding the accident might be proved by circumstances, and that the prima facie presumption created by the statute might be overcome by circumstantial evidence, provided such circumstantial evidence be convincing, full and complete. And the principle laid down in that case has been applied by the Court in the later cases of Mobile & Ohio R. Co. v. Robinson, 132 Miss. 841, 96 So. 749; Murray v. Louisville & Nashville R. Co., 168 Miss. 513, 151 So. 913; and Taylor v. Illinois Central R. Co., 200 Miss. 571, 27 So. (2d) 894. In none of these cases could an eyewitness be produced to testify that he saw the accident; but in each case the facts surrounding the accident were proved by circumstances, and the court held that the proof was sufficient to overcome the prima facie presumption of negligence.

In the case that we now have before us, the defendant's witnesses testified that the train and its appliances were in good order, that the members of the train crew were at their post of duty, and that the train at the time it passed the point where the plaintiff was injured was proceeding at a reasonable rate of speed and that the bell was ringing. The engineer was maintaining a proper lookout when he passed. He saw children along the railroad embankment, but no one on the track. He saw none of them leave the embankment and go toward the track, and the children were not in a dangerous position. The fireman and the brakeman who were both seated on the left side of the engine testified that they too kept a lookout and that they saw no children along the track; and

all three members of the train crew testified that the train did not strike anyone so far as they knew. From the testimony of these witnesses it is clear that the plaintiff was not struck by the engine on the train, but was struck by some other part of the train, after the engine and tender had passed the point where the accident occurred. The facts in this respect were therefore similar to the facts in the Hunnicut case, supra.

From the facts and circumstances testified to by the plaintiff's witnesses, and the statement made by the plaintiff himself to the claim agent the day after he received his injury, it appears that the plaintiff went upon the railroad track for the purpose of trying to "hop the train" and that he was in fact trying to "hop the train" at the time he was injured. From the testimony of the engineer and the fireman it appears that the plaintiff was not on the track at the time the engine and the front cars of the train passed the point where the accident occurred. We must therefore conclude that the plaintiff went upon the track after the engine and the front cars of the train had passed the point where he expected to "hop the train", and for that reason his presence on the track was not discovered by the members of the train crew. Although there was no eyewitness to testify that he saw the accident, we think that it cannot be said that the circumstances of the accident were not clearly shown, or that the facts and the attendant circumstances remain doubtful.

While there is some proof in the record that boys who lived in the neighborhood were accustomed to play in the boxcars standing on the side track, and that some of them at least had been accustomed to "hop" the moving trains, there was no proof that the railroad employees knew that the boys were in the habit of "hopping" the train or "hoboing" rides on the train.

We think that the facts and circumstances proved by the defendant's witnesses were sufficient to overcome the statutory presumption of negligence. Mobile & Ohio

R. Co. v. Robinson et al., supra; Murray v. Louisville & Nashville R. Co., supra; and Taylor v. Illinois Central R. Co., supra.

It is contended, however, by the appellant's attorneys that there is no positive proof in the record that the plaintiff was attempting to board the train and hobo a ride other than the statement made by the plaintiff himself to the claim agent while he was in the hospital the day after the accident; and the plaintiff's attorneys contend that the court erred in admitting this statement in evidence for the reason that it was not shown that the child was competent to testify as a witness, and that any statement that the child may have made to the claim agent could not be received as evidence against him.

In 20 Am. Jur. p. 504, Evidence, par. 594, the rule applicable to the admissions of an infant who is a party to a suit is stated as follows: "While an infant who has not a due sense of the obligation of an oath may be excluded from testifying in court, yet when an infant becomes a party to a suit, the same kinds of evidence, including admissions and declarations, are received against him as are received against an adult, subject to the limitation that his admissions can not be given the effect of imposing upon him a contractual liability which the law permits an infant to avoid." Coons v. Pritchard, 69 Fla. 362, 68 So. 225, L. R. A. 1915F, 558; Chicago City R. Co. v. Tuohy, 196 Ill. 410, 63 N. E. 997, 58 L. R. A. 270; Atchison, T. & S. F. R. Co. v. Potter, 60 Kan. 808, 58 P. 471, 72 Am. St. Rep. 385, 386; Hamblett v. Hamblett, 6 N. H. 333. However, the admissions of a child of such tender age as the plaintiff in this case should be received with caution, and the weight and effect of such admissions are to be determined by triers of fact, after due consideration of the child's age and understanding, and all the facts and circumstances in the case. Chicago City R. Co. v. Tuohy, supra; Atchison, T. & S. F. R. Co. v. Potter, supra.

The question of the admissibility of the child's statement as to how the accident occurred was not whether he was able to comprehend the binding effect of an oath, which would have been necessary to qualify him to testify as a witness, but whether he had sufficient understanding to enable him to relate facts.

Miss Lever, who testified concerning the statement made by the plaintiff to the claim agent, was examined before the court out of the presence of the jury as to the circumstances under which the statement was made before she was permitted to testify before the jury. She stated that she was present when the claim agent questioned the child about the accident. She stated that the claim agent obtained permission from the child's mother to ask him a few questions about the accident, and that the child's mother was present when the questions were asked. From Miss Lever's testimony, which was later repeated by her to the jury, it appears that the child's mind was clear at the time the claim agent questioned him about the accident and that he had sufficient understanding to be able to relate the facts. The plaintiff's attorneys made no request for an examination of the plaintiff himself during the inquiry for the purpose of determining whether the plaintiff had sufficient understanding to relate facts, and we think that no error was committed by the court in permitting the witness to testify concerning the statement made by the plaintiff to the claim agent.

In the case of Atchinson, T. & S. F. R. Co. v. Potter, supra [60 Kan. 808, 58 P. 471], the court in discussing the admissibility of the declarations made by the plaintiff, who was a minor seven years of age, concerning an accident in which he had lost a foot under circumstances similar to the circumstances shown in this case, said: "The general rule requiring all evidence to be given under the sanction of an oath, which operates to exclude some infants and other persons from testifying, is not a bar to the admission of the competent declarations of

such persons, when related by competent witnesses. Under the common law, as well as in some of the states, atheists and persons without religious belief are deemed insensible to the obligations of an oath and incompetent as witnesses, but declarations made by them against their own interests would not for that reason be rejected in a litigation in which they were interested. Neither should declarations of a like kind made by an infant be rejected merely because the court concludes that he does not understand or appreciate the nature of an oath. The vital importance of the evidence excluded can easily be understood when it is known that there were but two witnesses who saw the accident, one of whom testified that he was run down by the train, while the other testified that he was hanging onto the steps of a car. The declarations of the boy made immediately after the occurrence might have had great weight with the jury in settling the disputed question, and might have proved a controlling element in the case.''

The appellant's attorneys next contend that, even though the facts and circumstances surrounding the accident may have been shown by clear and convincing evidence, and the statutory presumption of negligence may have been eliminated as a factor in determining the defendant's liability, the question of the defendant's negligence should nevertheless have been submitted to the jury under the rule applied in the case of Young v. Southern Railway Co., 97 Miss. 483, 52 So. 19.

In the Young case, the facts alleged were that the railroad company had for several years maintained dwelling houses, constructed of old boxcars, for use and occupancy by its employees, quite near to and fronting upon the tracks; that the usual way of ingress to and egress from these houses was over and across the company's railroad tracks, and the children of its employees occupying the houses had been accustomed for several years to play upon the tracks opposite the houses, and this was known to the railway company; and that the

child of an employee, residing in one of the houses, was killed while playing upon the railway tracks opposite the houses by the negligent management of one of the company's trains. The Court held that under the allegations of the declaration the child who was two and one-half years old was more than a mere licensee, and that the demurrer to the declaration should have been overruled. ·

It can be readily seen that the facts in the Young case were wholly unlike the facts shown in the record that we now have before us and that the statement of the Court in the opinion in the Young case that the child who was killed was more than a mere licensee is not applicable to the facts in this case.

The appellant's attorneys also argue that the attractive nuisance doctrine, or the doctrine of the Turntable Cases [Sioux City & P. R. Co. v. Stout, 17 Wall 657, 21 L. Ed. 745], should be applied in this case, for the reason that the defendant permitted its right of way to be used by children as a playground. But the courts have held in a long line of decisions that the attractive nuisance doctrine has no application to a case of this kind, and that moving railroad cars are not dangerous machines in the sense that that term is used in the Turntable Cases. Steele v. Pittsburgh, C. C. & St. L. R. Co., 4 Ohio Dec. 350; Barney v. Hannibal & St. J. R. Co., 126 Mo. 372, 28 S. W. 1069, 26 L. R. A. 847; Catlett v. St. Louis, I. M. & S. R. Co., 57 Ark. 461, 465, 21 S. W. 1062, 38 Am. St. Rep. 254; Underwood v. Western & A. R. Co., 105 Ga. 48, 31 S. E. 123; Wilson v. Atchison, T. & S. F. R. Co., 66 Kan. 183, 71 P. 282; Smalley v. Rio Grande Western R. Co., 34 Utah 423, 98 P. 311; O'Conner v. Illinois Central R. Co., 44 La. Ann. 339, 10 So. 678; Swartwood's Guardian v. Louisville & N. R. Co., 129 Ky. 247, 111 S. W. 305, 19 L. R. A., N. S., 1112, 130 Am. St. Rep. 465; St. Louis Southwestern R. Co. v. Davis, Tex. Civ. App., 110 S. W. 939; Bogdon v. Los Angeles & S. L. R. Co., 59 Utah 505, 205 P. 571; Clark v. Northern P. R. Co., 29

Wash. 139, 69 P. 636, 59 L. R. A. 508; Nixon v. Montana, W. & S. W. R. Co., 50 Mont. 95, 145 P. 8, Ann. Cas. 1916B, 299; and Berg v. Duluth, S. S. & A. R. Co., 111 Minn. 305, 126 N. W. 1093.

Finally, the appellant's attorneys contend that, even though the court may hold that the attractive nuisance doctrine, or the doctrine of the Turntable Cases, is not applicable in a case of this kind, the case should nevertheless have been submitted to the jury on the question of the defendant's liability under the so-called "playground rule." And in support of this contention, the appellant's attorneys say that the proof shows that the children living in the Neatum Street area had been accustomed for a long period of time to play on the right of way embankment near the defendant's railroad tracks and in the boxcars standing on the side track near the point where the plaintiff was injured, and that this fact was known to the defendant's employees in charge of the operation of its train, and that the defendant's employees should have kept a more effective lookout to avoid injury to the plaintiff and other children who might be using the railroad right of way as a playground. The appellant's attorneys cite many cases in which the courts have held that a railroad company is liable for an injury to a child in or about a standing boxcar, where it is shown that the railroad company knew, or ought to have known, that children were accustomed to play in or about the standing boxcar, or the premises on which the boxcar was located, and the employees of the railroad company in charge of its train failed to maintain a proper lookout or to exercise reasonable care to avoid injury to such child. And the appellant's attorneys cite in particular the case of Thompson v. Missouri, K. & T. Ry. Co. of Texas, 11 Tex. Civ. App. 307, 32 S. W. 191, which they say is an almost exact parallel to the present case.

It is not necessary that we undertake to discuss in detail the opinion rendered by the Texas Court in the

Thompson case, for the reason that the facts alleged in the plaintiff's petition in that case are so entirely unlike the facts shown in this case that it would be difficult for us to make a detailed comparison of the facts and the principles of law involved in the two cases without unduly prolonging this opinion. But in the Thompson case it was alleged that the child was injured at a public crossing, which was much used and frequented by children and the public generally, and that the child with other children was, within the knowledge of the employees of the railroad company operating its trains, in the habit of boarding trains at that crossing, and riding a distance. In the case that we now have before us the plaintiff did not attempt to board the train at a public crossing, but in a cut between right of way embankments several feet higher than the railroad tracks and some distance from a public crossing; and there was no proof whatever to show that the employees of the railroad company operating its train knew that the plaintiff, with other children, was in the habit of boarding trains at the point on the railroad right of way where the plaintiff attempted to board the train. And the plaintiff's brother, Aaron Mathis, testified that the plaintiff had never attempted to "hop the train" before. In the Thompson case the plaintiff alleged that at the time he was attempting to get on the train this fact was known to the employees of the railroad company operating the train, or they could have known it by the exercise of ordinary diligence. In the case that we now have before us there was no proof whatever to show that the employees of the railroad company operating its train knew that the plaintiff was attempting to get on the train or could have known it by the exercise of ordinary diligence.

Assuming that the employees of the railroad company operating the train in the case that we now have before us were under a duty to maintain a proper lookout for children along the right of way near the point where the plaintiff's injury was inflicted, we think

that the testimony of the members of the train crew shows that they were maintaining a proper lookout. ■■ ■ We do not think that it was the duty of the railroad company to place a guard or a flagman in the right of way cut to keep children from attempting to board the train.

As stated by the court in the case of Union Ry. Co. v. Williams, 6 Cir., 187 F. (2d) 489, 493, "We have not found that any court has gone so far as to require railroad companies to patrol its tracks or police its trains with a sufficient number of guards to prevent boys from attempting to board them. Angiline v. Norfolk & W. Ry. Co., 99 W. Va. 85, 128 S. E. 275, 43 A. L. R. 34; Oregon R. & Nav. Co. v. Egley, 2 Wash. 409, 26 P. 973, 26 Am. St. Rep. 860; Wilson v. Atchison, T. & S. F. Ry. Co., 66 Kan. 183, 186, 71 P. 282."

It seems clear to us that the appellant was not injured as a result of any negligent act of omission or commission on the part of the employees of the railroad company, but that his injury was caused by his own rash act in trying to "hop" one of the appellee's trains, just as other boys who were more capable of taking care of themselves had done. He apparently approached the train for the purpose of catching a ride after the engine and tender had passed the point where he was standing, and attempted to "hop" the train when none of the employees of the railroad company were likely to see him. However much we may sympathize with him on account of the injury which he sustained in falling from the moving train, we think that the record fails to show negligence on the part of the railroad company or its employees in charge of the train, and that the defendant was entitled to the peremptory instruction granted by the trial judge. For the reasons stated above the judgment of the lower court is affirmed.

Affirmed.

**Roberds, P. J.,** and **Alexander, Hall,** and **Holmes, JJ.,** concur.