Daniel C. Briney, Minor, Appellee, v. Illinois Central Railroad Company, Appellant.

Gen. No. 42,676.

376

Opinion filed December 13, 1944. Released for publication January 4, 1945.

JOHN W. FREELS and HERBERT J. DEANY, both of Chicago, for appellant; VERNON W. FOSTER and CHARLES A. HELSELL, both of Chicago, of counsel.

JOSEPH BARBERA, of Chicago, for appellee; HARRY G. FINS, of Chicago, of counsel.

MR. JUSTICE KILEY delivered the opinion of the court.

This is a personal injury action arising out of an accident in which plaintiff on July 7, 1937, when he was 8 years and 9 months old, suffered injuries as a result of which his left leg was amputated a few inches below the hip. This appeal is taken by defendant from a judgment upon a verdict in plaintiff's favor for $40,000.

The accident happened in Riverdale, Illinois, through which defendant's right of way, carrying 7 sets of track, passes. At about 140th Street the right

of way of the Indiana Harbor Belt extends east and west at grade. The defendant's right of way overpasses the Belt right of way at this point. All streets between 138th and 144th are dead end streets on both sides of defendant's right of way. Vehicular and pedestrian viaducts carry traffic underneath its right of way at 138th Street and 144th Street. Upon this right of way, counting from the west, tracks No. 1 and No. 2 carry suburban trains; tracks No. 3 and No. 4 passenger trains; tracks No. 5 and No. 6 freight trains; and track No. 7, known as the interchange track also carries freight. The trains for this latter track are made up in the Markham Yard at 157th Street and are carried north to about 141st Street, where the interchange track curves northeast and downward toward the Belt tracks. At grade the train is switched onto the Belt right of way and moved west. At about 142nd Street there is a signal tower supported by two upright posts—one on the east, located between tracks 6 and 7 and one on the west between 1 and 2. The day of the accident plaintiff had spent the forenoon in Riverdale Park, adjoining the defendant's right of way on the west between 137th and 138th Streets, with Russell Reichert, then 12, and Bobby and Billy Sutton then, respectively, 14 and 12. He lunched at Reicherts, then, with the others, shot off firecrackers in the Belt underpass, after which they emerged on the east and climbed by a footpath up to defendant's right of way, walked south and sat next to the eastern post of the signal tower, awaiting the freight train which came north on track 7 daily at 1:30 p. m. Several minutes later the train consisting of 45 freight cars with a caboose at the north end, all being pushed by the engine at the south end of the train, passed the boys on its way upon the curve to the northeast. After several cars had passed, one of the Sutton boys "jumped on." A few more cars passed and the other Sutton boy did likewise. Plaintiff tried to board the same car as the latter boy,

who tried to help him reach a bar to swing onto the stirrup. Plaintiff reached and missed the bar, the Sutton boy lost hold of him and the accident followed. No signal of any kind was given of the approach of the train. The conductor of the train was riding in the caboose, but on the east side at a window where he could communicate signals to the engineer. With him was the flagman who was seated facing north just inside the open door at the north end of the caboose. The brakeman was seated on the east side of a tank car. None of these men and neither of the two in the engine cab had any knowledge of the accident until after it occurred.

The issues made by the pleadings and submitted to the jury were whether defendant was negligent in failing to anticipate plaintiff's presence, since it knew that footpaths in continual use by the public led across its tracks; whether it was negligent in failing to fence in its right of way, as a result of which plaintiff was able to enter thereon; and whether it was negligent in failing to use ordinary care for plaintiff's safety after its servants had permitted companions of plaintiff previously to board the moving interchange train and throw switches, for reward, thereby inducing plaintiff into danger.

The last issue referred to embraces three elements: The accident and injury, which are shown; defendant's negligence proximately causing the injury; and plaintiff's care. Defendant urges us to determine as a matter of law that it owed plaintiff only the duty of not wilfully and wantonly injuring him because he was a trespasser and was himself negligent. There was no charge of wilfulness and wantonness. Defendant cites many cases where small boys trespassing upon railroad rights of way and tracks were injured but precluded from recovery on the basis urged by it here. These cases beg the question. In *Louisville & N. R. Co. v. Webb,* 35 S. W. 1117 (Kentucky 1896), cited by

defendant and not distinguished by plaintiff, similar
in facts, the court held that a coal pile properly placed
by the railroad between sets of tracks was the inter-
vening and proximate cause of the boy's injury. It is
therefore not pertinent. It is true that the evidence
shows plaintiff had never boarded the train or thrown
switches as the other boys were permitted to do, and
that the trip the day of his injury with the others was
his first; that he was not on the tracks proper, but 8
feet from the train as it passed; that he had seen the
train approaching for more than a mile to the south;
that there were no switches at or near the point of the
injury and none unlocked either on the day of the acci-
dent nor previously, except far away down the curve;
and that plaintiff was reared in a railroad atmosphere,
since he lived near and played on the Belt tracks, his
father was a railroad man and plaintiff had been
"chased" from the Belt right of way on previous oc-
casions. There is evidence in the record that defend-
ant's servants permitted for two years or so, previous
to the day of the accident, plaintiff's companions on
that day and other small boys to board the moving, in-
terchange freight train and other switches leading to
its movement on the Belt right of way. In view of this
evidence, the jury might have believed that defendant
should have foreseen that knowledge of that permis-
sion would be communicated to other small boys such
as plaintiff who would be induced, according to com-
mon experience, to imitate the other, especially older,
boys; that although plaintiff was 8 feet from the train,
in view of the permission, defendant's servants should
have anticipated, even had they seen the boys, that the
latter would attempt to board the train; that while
whistles and bells signaling the approach of the train
may have been unnecessary, sounding them and the
presence of trainmen actually giving warnings may
have deterred plaintiff from his attempt to board the
moving train; that assuming the permission, defend-

ant should have anticipated the presence of the boys not only at the points of switching, but in places of reasonable proximity; that the flagman's duty to observe under the circumstances was not limited to the track proper; that the permission embraced dangerous activities especially for small boys and should have been ended before or on that day, and that revoking the permission required more stringent treatment than simple warnings; that having extended the permission defendants' servants should have anticipated that small boys would be present and would attempt to board the train and that not only those actually permitted previously, but others, even younger, might be present and make the attempt; that plaintiff was not a trespasser at the time of his injury; and that the defendant was negligent. We cannot say that determining this question was not the province of the jury, for we cannot say as a matter of law that defendant should not have foreseen that plaintiff's injury would follow as a proximate result of the permission granted, unless ordinary care was used in anticipating his presence and in trying to prevent his "jumping on" the train.

Defendant argues that plaintiff's action in attempting to board the train was the sole, proximate cause of the injury. The evidence of the long standing permission, included the boarding of a moving train. The question of plaintiff's contributory negligence was for the jury. *Maskaliunas v. C. W. I. R. R. Co.,* 318 Ill. 142. The case of *Heimann v. Kinnare,* 190 Ill. 156 is not applicable though its general language on the question of contributory negligence of a child is helpful. *Gemmill v. Grand Trunk & Western Ry.,* 211 Ill. App. 246 does not bind us here because of the wide difference of facts. The jury may have believed that plaintiff here was not, because of his age, as adept as his companions at "jumping" on, but that he was not, under the circumstances, negligent. We cannot say

that, assuming the standing permission, the failure of defendant to anticipate plaintiff's presence and to warn him against boarding the train was not the proximate cause of the injury.

The case of *Oatman v. St. Louis & Southwestern Ry. Co.*, 263 S. W. 139 (Mo.), cited by defendant on the question of lack of authority on the part of its servants to grant permission to the boys to aid in switching, is not applicable because the theory of plaintiff's action in that case was entirely different from that here.

We believe that the trial court should have withheld from the jury the first issue recited above. The footpaths in themselves, and because of what we say of fencing hereinafter, and the use of them by the public to cross tracks, are not legally related to the accident in this case.

Defendant moved to strike the charge based on failure to fence. The motion was denied but defendant answered. It denied any duty to construct the fence. At the trial it objected to testimony that the right of way was not fenced between 138th and 144th Street. Its objections were overruled. In its motion for judgment notwithstanding the verdict, it denied such a duty. The court refused to give defendants' instruction No. 4, stating that as a matter of law "under the facts in this case" it had no duty to fence its right of way. The refusal to give the instruction was reversible error. The City of Chicago has an ordinance which requires fencing of right of ways within its boundaries. So far as the record shows there is no such ordinance at Riverdale. The fencing statute of this state imposes no duty to fence against children. *Bischof v. Illinois Southern Ry. Co.*, 232 Ill. 446; *Heiting v. C. R. I. & P. R. R. Co.*, 252 Ill. 466. There is no common law duty to do so. Elliott on Railroads, 3rd Ed., Vol. 3, section 1695; *Colby v. Chicago Junction Ry. Co.*, 216 Ill. App. 315; *Standard Steel Works v. C. A. & E. R. R. Co.*, 29 Fed. Supp. 297. Because of the error in admit-

ting testimony with reference to the lack of fencing and because of the refusal to give defendant instruction No. 4, the cause must be retried.

For the reasons given the judgment of the Circuit Court is reversed and the cause is remanded for a retrial according to the views herein expressed.

*Reversed and remanded.*

BURKE, P. J., and LUPE, J., concur.