### Robert J. Kline *v.* New York, New Haven and Hartford Railroad Company et al.

Alcorn, C. J., House, Thim, Ryan and Shapiro, Js.

Argued November 4—decided December 23, 1970

*Robert J. Frechette,* for the appellant (plaintiff).

*John F. Scully,* with whom, on the brief, were *Joseph P. Cooney* and *David T. Ryan,* for the appellees (defendants).

House, J.    This action arose from an incident which happened on Sunday morning, August 26,

1962, when Robert Kline, then two weeks shy of his twelfth birthday, sustained serious injuries when he fell from a freight train onto which he had hopped in the freight yards owned and operated by the New York, New Haven and Hartford Railroad Company in New Haven. Although the suit was brought by Robert's father acting in his behalf, we will refer to Robert as the plaintiff. The action was instituted against not only the railroad but its trustees in reorganization, and we will refer to them collectively as the "defendant" and the "railroad."

The case was tried to a jury on issues of negligence, contributory negligence and proximate cause. At the conclusion of the evidence, the defendant moved for a directed verdict, which the court denied. The jury were unable to agree upon a verdict and were discharged, whereupon the defendant, pursuant to § 255 of the Practice Book, properly moved for judgment in accordance with its motion for a directed verdict.[1] See *Haag* v. *Beard Sand & Gravel*

---

[1] "Sec. 255. RESERVATION OF DECISION ON MOTION FOR DIRECTED VERDICT. Whenever a motion for a directed verdict made at the close of all the evidence is denied or for any reason is not granted, the court is deemed to have submitted the action to the jury subject to a later determination of the legal questions raised by the motion. After the acceptance of a verdict and within the time stated in Sec. 254 for filing a motion to set a verdict aside, a party who has moved for a directed verdict may move to have the verdict and any judgment entered thereon set aside and have judgment entered in accordance with his motion for a directed verdict; or if a verdict was not returned such party may move for judgment in accordance with his motion for a directed verdict within the aforesaid time after the jury has been discharged from consideration of the case. If a verdict was returned the court may allow the judgment to stand or may set the verdict aside and either order a new trial or direct the entry of judgment as if the requested verdict had been directed. If no verdict was returned the court may direct the entry of judgment as if the requested verdict had been directed or may order a new trial."

*Co.,* 151 Conn. 125, 126, 193 A.2d 711; *Robinson* v. *Southern New England Telephone Co.,* 140 Conn. 414, 420, 101 A.2d 491; Maltbie, Conn. App. Proc. §§ 206, 207. The court granted this motion and ordered judgment accordingly, filing a lengthy memorandum of decision in which it meticulously considered and discussed the considerations relevant to its order. Specifically, it concluded (1) that as a matter of law the defendant was not negligent in any respect alleged in the substituted complaint; (2) that if there was any negligence on the part of the defendant, as a matter of law such negligence was not a proximate cause of the plaintiff's injuries; (3) that the plaintiff was guilty of contributory negligence as a matter of law which precluded a recovery of damages from the defendant; and (4) that the court should have directed a verdict in favor of the defendant as requested by it and not have submitted the case to the jury. On his appeal, the plaintiff assigns error in the court's conclusions, in the denial of his motion in arrest of judgment and in the granting of the defendant's motion for judgment notwithstanding the jury's failure to return a verdict.

Ordinarily, questions of negligence, contributory negligence and proximate cause are questions of fact for a jury, but the conduct of the parties may be such that a court is justified in making a determination of the questions as a matter of law. "[I]t may and sometimes does happen, that the conduct under investigation is so manifestly contrary to that of a reasonably prudent man, or is so plainly and palpably like that of such a man, that the general rule itself may be applied as a matter of law, by the court, without the aid of a jury. That is, the conduct may be such that no court could hesitate or be in

doubt concerning the question whether the conduct was or was not the conduct of a person of ordinary prudence under the circumstances." *Farrell* v. *Waterbury Horse R. Co.,* 60 Conn. 239, 249, 21 A. 675.

In reviewing the action of the court in directing a verdict for the defendant or, as in this case, pursuant to Practice Book § 255 when no verdict was returned, in directing the entry of judgment as if the requested verdict had been directed, we consider the evidence printed in the appendices to the briefs in the light most favorable to the plaintiff. Practice Book §§ 716, 720; *Douglass* v. *95 Pearl Street Corporation,* 157 Conn. 73, 77, 245 A.2d 129; *Console* v. *Nickou,* 156 Conn. 268, 270, 240 A.2d 895; *Grills* v. *Pepsi-Cola Bottling Co.,* 151 Conn. 627, 629, 201 A.2d 185.

It is unnecessary to review in detail the evidence submitted in this case or repeat all the considerations fully discussed by the trial court in its memorandum of decision. It suffices to note briefly the salient facts. The plaintiff with his brother and a friend decided to hop aboard a freight train which was being switched on a spur track in the defendant's railroad yard. The plaintiff's father, who was an employee of the defendant, had warned the plaintiff about the dangers of such conduct, and his companion declined to join in the venture, stating that he was afraid he would get hurt or get in trouble. To avoid detection, the plaintiff and his brother squatted down at the bottom of an embankment which was roughly four to four and one-half feet below the tracks. They remained squatted down and hiding until the engine had gone by and they were out of vision from it, and then they went up the embankment and trotted alongside the freight cars which were going

at about four or five miles per hour. The plaintiff reached up and grabbed the ladder on the side of a freight car and pulled himself up onto the moving train. After he had successfully completed this maneuver, the plaintiff, to avoid being seen, then tried to swing to the ladder on the end of the car but in doing so slipped and fell.

The plaintiff by his own admission was a trespasser on the railroad right-of-way and deliberately hid to avoid detection by the train crew, who were unaware of his presence and had no knowledge of the accident until the engine reached the railroad yard one-half mile from where the accident happened.

In *Green* v. *DiFazio*, 148 Conn. 419, 171 A.2d 411, and *Wolfe* v. *Rehbein,* 123 Conn. 110, 193 A. 608, this court adopted the rule stated in the Restatement, 2 Torts § 339, with respect to the liability of the possessor of property for physical harm to young children trespassing thereon caused by an artificial condition upon the land. Since the decisions in those cases, the Restatement (Second) has been issued. Some changes have been made in the phraseology of § 339, but the general principles remain unchanged. The rule contains the condition precedent to liability that "(d) the utility to the possessor of maintaining the condition and the burden of eliminating the danger are slight as compared to the risk to the children involved." Restatement (Second), 2 Torts § 339 (d).

We are not persuaded by the contention of the plaintiff that in the circumstances the railroad "has a duty to walk the train through this heavily used area." As the Pennsylvania Supreme Court in *Scibelli* v. *Pennsylvania R. Co.,* 379 Pa. 282, 108 A.2d 348, observed in language applicable to the facts in

this case (p. 289) : "Needless to say, the operation of its trains by a railroad company over its right-of-way for the transportation of freight is an essential function. It is vital to commerce, and the public as well as the railroad company has an interest therein. The maintenance of service should not be made unduly burdensome. We have been referred to no case where a court has gone so far as to require a railroad company to patrol its tracks or police its trains with a sufficient number of guards to prevent children from attempting to board them. On the contrary, other jurisdictions have held no such duty exists . . . . It is difficult to conceive how a proper operation of trains for the service of the public could be maintained if the standard of responsibility contended for received countenance. . . . [p. 290] Under the facts of this case the impracticable and burdensome task of exercising police supervision over its trains would be out of proportion to the risk to minor trespassers involved. . . . [p. 291] We are obliged to hold that the unfortunate accident which occurred in the present case was not attributable to any negligence on the part of the defendant, but was proximately caused by the minor plaintiff's own impulsive act." See also *Dugan* v. *Pennsylvania R. Co.*, 387 Pa. 25, 127 A.2d 343; *Union Ry. Co.* v. *Williams,* 187 F.2d 489 (6th Cir.) ; *Nolley* v. *Chicago, M., St. P. & P.R. Co.*, 183 F.2d 566 (8th Cir.).

From the evidence submitted, not only would the jury not have been justified in finding any breach of duty on the part of the defendant but "the rule still obtains that a plaintiff cannot recover if his own wrongful conduct was a proximate cause of his injury. *LeBlanc* v. *Grillo,* 129 Conn. 378, 385, 28 A.2d 127." *Essam* v. *New York, N.H. & H.R. Co.*, 140 Conn. 319, 324, 99 A.2d 138. On the basis of the

evidence, we find no error in the conclusions of the trial court attacked by the plaintiff and the rendition of the judgment which it directed.

There is no error.

In this opinion the other judges concurred.