Frances HOLLAND, et al., Appellants,

v.

**BALTIMORE & OHIO RAILROAD
COMPANY, et al., Appellees.**

No. 12429.

District of Columbia Court of Appeals.

Argued En Banc Nov. 26, 1979.

Decided May 29, 1981.

Florence R. King, Washington D. C., with whom Wiley A. Branton, Washington, D. C., was on the brief, for appellants.

Laidler B. Mackall, Washington, D. C., with whom Loren Kieve, Washington, D.C., was on the brief, for appellee Baltimore & Ohio Railroad Co.

James C. McKay, Washington, D. C., with whom Jeffrey G. Huvelle, Washington, D. C., was on the brief, for appellee Penn Central Transportation Co.

Alfred L. Singer, Washington, D. C., filed a brief for amicus curiae, Association of Plaintiffs' Trial Attorneys of Metropolitan Washington, D. C.

Before NEWMAN, Chief Judge, KELLY, KERN, NEBEKER, HARRIS, MACK, FERREN and PRYOR, Associate Judges, and GALLAGHER, Associate Judge, Retired.*

NEBEKER, Associate Judge:

This appeal arises from trial court orders dismissing appellants' complaint with respect to appellee Baltimore & Ohio Railroad Company (B & O), and granting summary judgment on the complaint to appellee Penn Central Transportation Company (Penn Central). The complaint sought damages for injuries suffered by a nine-year-old child who was injured by a train while trespassing on an area of railroad right-of-way where the two appellees maintain contiguous tracks.

In granting B & O's motion to dismiss for failure to state a claim upon which relief could be granted, the trial court utilized the standard set by *Firfer v. United States*, 93 U.S.App.D.C. 216, 208 F.2d 524 (1953), and dismissed because the complaint failed to allege a willful, wanton, or intentional injury.[1] In so doing, the trial court ruled that the attractive nuisance theory of liability, which formed the basis of the complaint, was not available on the facts as pleaded. The court recognized that

[t]he present state of the law in this jurisdiction, *Bethea v. United States* [D.C.App., 365 A.2d 64 (1976), *cert. denied*, 433 U.S. 911, 97 S.Ct. 2979, 53 L.Ed.2d 1095 (1977)], is that the doctrine of attractive nuisance "does not extend to things which become dangerous only when adults set them in motion" such as a moving railroad car. *Harris v. Roberson*, 78 U.S.App.D.C. 246, 139 F.2d 529 (1943). Here of course, the plaintiff was struck and injured by a moving train therefore he may not assert the attractive nuisance doctrine.

The court applied the same law in granting Penn Central's motion for summary judgment.[2]

---

* Judge Gallagher's status changed from that of Associate Judge to Associate Judge, Retired, on February 27, 1981. *See* D.C.Code 1973, § 11–1502.

1. The trial court relied on *M.A.P. v. Ryan*, D.C.App., 285 A.2d 310 (1971), and *Bethea v. United States*, D.C.App., 365 A.2d 64 (1976), *cert. denied*, 433 U.S. 911, 97 S.Ct. 2979, 53 L.Ed.2d 1095 (1977), in specifically rejecting the argument that *Firfer* had been overruled by a decision of the United States Court of Appeals for the District of Columbia Circuit in *Smith v. Arbaugh's Restaurant, Inc.*, 152 U.S.App.D.C. 86, 469 F.2d 97 (1972).

2. A statement of facts not in dispute submitted by Penn Central in support of its motion for summary judgment revealed, *inter alia*, that no Penn Central freight train had come within a one-mile radius of the accident scene on the afternoon in question. Other record materials which were properly before the trial court in connection with the Penn Central motion revealed that the victim had accompanied a twelve-year-old friend to the tracks on the day in question. The deposition of appellant Kevin Holland states that Donald Bowden boarded the moving train and as he passed the place where appellant stood, reached out and grabbed appellant.

Q How did you happen to get hurt?
A He grabbed hold of me.
Q He grabbed hold of you?
A Yes.
Q And is that what threw you under the wheel?
A Yes.
Q And if Donald had not grabbed hold of you you would not have been hurt?
A No, I would not have been hurt.

A division of this court which originally heard the appeal affirmed the trial court's decision as to Penn Central, but reversed and remanded as to B & O. *Holland v. Baltimore & Ohio R. Co.* (No. 12429, June 15, 1979), *vacated* September 21, 1979.[3]

Having granted appellee B & O's petition for rehearing en banc, we are now called on to decide whether the *Firfer* rule should be abandoned, and if it is not, whether the attractive nuisance exception is available to appellants. We conclude that *Firfer v. United States, supra,* continues to represent the general rule of landowner liability to trespassers in this jurisdiction. We further hold that the narrow attractive nuisance doctrine exception to the general rule is not applicable in this case as a matter of law.

Since, as the trial court recognized, the same law concerning the general duty of landowners to trespassers and the availability of the attractive nuisance exception is outcome determinative as to both appellees, a unitary analysis is appropriate.

## I. THE GENERAL RULE

In 1953, the United States Court of Appeals for the District of Columbia Circuit set the standard to be applied in suits by trespassers against landowners for injuries suffered on the landowners' property. Trespassers may only recover for "intentional, wanton or willful injury or maintenance of a hidden engine of destruction." *Id.* 93 U.S.App.D.C. at 219, 208 F.2d at 528. *Firfer* has never been overruled in the Dis-

trict of Columbia. Appellants urge, however, that we now abandon *Firfer* in favor of a "reasonable care under the circumstances" standard, as adopted in 1972 by the circuit court in *Smith v. Arbaugh's Restaurant, Inc.*, 152 U.S.App.D.C. 86, 469 F.2d 97 (1972). While it is clear that this court sitting en banc may overrule otherwise binding precedent such as *Firfer*, we decline to do so in this instance.

We recognize that there has been some movement here, and in other jurisdictions, in the direction of abolishing the distinctions between invitee and licensee plaintiffs on the question of the duty of care owed them by landowners. However, the trespasser classification has not been included in this movement in the overwhelming majority of such jurisdictions, including the District of Columbia.[4] *See Alston v. Baltimore & Ohio R. Co.*, 433 F.Supp. 553 (D.D.C. 1977), W. Prosser, Law of Torts § 62, at 398 (4th ed. 1971). In *Blumenthal v. Cairo Hotel Corp.*, D.C.App., 256 A.2d 400 (1969), and *D. C. Transit System, Inc. v. Carney*, D.C. App., 254 A.2d 402 (1969), this court adopted a reasonable care standard as to plaintiffs viewed as invitees or licensees. *Carney* involved a common carrier sued by a passenger for injuries suffered as a result of an abrupt stop made by the carrier's vehicle. In reversing the trial court's award of damages to the passenger, we stated that the carrier was held to a standard of care commensurate with the particular hazards involved. In *Blumenthal*, we

---

Q Where you were standing you were not in a position where you would have been hit by the train?

A No.

Q When Donald came by he grabbed hold of you?

A Yes.

Q And that is what pulled you into the train?

A When he pulled me I fell.

Q When he pulled you you fell and your leg went on the track and that is how you got hurt?

A Yes.

**3.** The opinion was published in the advance sheet at 403 A.2d 1114 (1979), but does not appear in the bound volume.

**4.** Several jurisdictions have in fact recently refused to abolish the distinction even as to licensees and invitees. *Whaley v. Lawing*, 352 So.2d 1090, 1091 (Ala.1977); *McAbe v. Walt Disney World Co.*, 350 So.2d 814, 815 (Fla.Dist. Ct.App.1977); *Springer v. Pearson*, 96 Idaho 477, 479, 531 P.2d 567, 569 (1975); *Gartley v. Chicago Housing Authority*, 28 Ill.App.3d 705, 707, 329 N.E.2d 252, 254 (1975); *Champlin v. Walker*, 249 N.W.2d 839, 842 (Iowa 1977); *Gerchberg v. Loney*, 223 Kan. 446, 449–455, 576 P.2d 593, 597–600 (1978); *Steen v. Grenz*, 167 Mont. 279, 538 P.2d 16, 17 (1975); *Andrews v. Taylor*, 34 N.C.App. 706, 708, 239 S.E.2d 630, 632 (1977); *Moore v. Denune & Pipic, Inc.*, 26 Ohio St.2d 125, 127, 55 Ohio Op.2d 237, 238, 269 N.E.2d 599, 601 (1971).

sustained a summary judgment in favor of a landlord who was sued for alleged negligence in failing to maintain in working order a window lock in plaintiff/lessee's apartment. Plainly, landowner liability to trespassers was not an issue in either of these cases.

Appellants' argument for adopting a single standard of care as to trespassers is primarily based on *Smith v. Arbaugh's Restaurant, Inc., supra.* There, the plaintiff, a health inspector, suffered a back injury when he slipped on a restaurant stairway while making an inspection. In denying recovery, the circuit court stated its intention to discard the common law theories which determined liability of a landowner by reference to the status of the entrant upon the property, and then concluded: "[a] landowner must act as a reasonable man in maintaining his property in a reasonably safe condition in view of all the circumstances . . . ." *Id.* 152 U.S.App.D.C. at 89, 469 F.2d at 100.

The attempt in *Arbaugh's* to rewrite the general law of tort liability of landowners in the District of Columbia failed for two reasons. First, the issue of the duty of care owed a trespasser by a landowner was not before the court. Judge Leventhal noted this fact in his concurrence in *Arbaugh's, id.* 152 U.S.App.D.C. at 97, 469 F.2d at 108, and in his concurrence in a later case brought by an injured guest against his hosts, *Cooper v. Goodwin,* 155 U.S.App.D.C. 449, 454, 478 F.2d 653, 658 (1974).[5]

 Judge Leventhal's concurrence in *Cooper* also noted the second reason why the abolishment of plaintiff classifications

in *Arbaugh's* should not be given effect. At the time the *Arbaugh's* decision was handed down, the circuit court was "no longer the authoritative expositor of the common law of the District of Columbia." *Cooper v. Goodwin, supra.* The criteria for determining whether an opinion of the United States Court of Appeals for the District of Columbia Circuit constitutes binding precedent in this jurisdiction are set forth in *M.A.P. v. Ryan,* D.C.App., 285 A.2d 310 (1971). Decisions of the circuit court issued prior to February 1, 1971, the effective date of court reorganization, "constitute the case law of the District of Columbia." *M.A.P. v. Ryan, id.* at 312. In contrast, cases decided by the circuit court after that date, including those which purport to set aside prereorganization case law, are not binding on this court. *Bethea v. United States, supra.* Furthermore, it is arguable that under *Erie Railroad v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), the circuit court was bound in *Arbaugh's* to apply the law of the District of Columbia as if the District were a state. *See Steorts v. American Airlines,* 647 F.2d 194 (D.C.Cir., 1981); *Lee v. Flintkote,* 193 U.S.App.D.C. 121, 593 F.2d 1275 (1979). *Erie* requires federal court adherence to the substantive legal precedents of the highest court in the state. In the District, this means that the federal courts should follow (1) decisions rendered by this court subsequent to the court reorganization date, and (2) those decisions rendered prior to court reorganization by the circuit court which have not been overruled by this court sitting en banc.[6]

---

5. Judge Sobeloff also filed a concurring opinion in *Cooper* in which he articulately addressed this matter:

> Actually, the question of the degree of care owed by property owners to trespassers is not presented in this case. it was neither briefed nor argued. The discussion about the duty to trespassers is entirely gratuitous and without foundation in the record. [*Cooper v. Goodwin, supra,* 155 U.S.App.D.C. at 454, 478 F.2d at 658.]

And, in *Luck v. Baltimore & Ohio R. Co.,* 166 U.S.App.D.C. 283, 285 n.2, 510 F.2d 663, 665

n.2 (1975), the court recognized that the *Arbaugh's* holding does not extend to trespassers.

6. Judge Keech recognized the applicability of *Erie* in *Luck v. Baltimore & Ohio R. Co.,* 352 F.Supp. 331 (1972):

> The standard of care required in this jurisdiction under applicable law established by the United States Court of Appeals for the District of Columbia in the *Firfer* case when it was functioning as the highest court of the *District of Columbia* (in comparable State status) is controlling. Decision by the United States Court of Appeals for the District of Columbia in the *Arbaugh* case, coming after

Having found the circuit court's attempt to modify District of Columbia case law in the 1972 *Arbaugh's* decision to be without precedential effect as to trespassers, we find no other compelling reason to abandon *Firfer*. In this jurisdiction, trespassers may, generally speaking, only recover from landowners for injuries that were willful, wanton, or that resulted from maintenance of a hidden engine of destruction.

## II. THE ATTRACTIVE NUISANCE EXCEPTION

During the latter part of the nineteenth, and into the twentieth century, the attractive nuisance doctrine developed as a narrow exception to the general rule of landowner liability to trespassers. In 1934, the American Law Institute (ALI) set out its formulation of the attractive nuisance doctrine in the Restatement of Torts. A slightly modified formulation of this doctrine was later published by the ALI in 1959 in the Restatement (Second) of Torts. It reads as follows:

§ 339. Artificial Conditions Highly Dangerous to Trespassing Children

A possessor of land is subject to liability for physical harm to children trespassing thereon caused by an artificial condition upon the land if

(a) the place where the condition exists is one upon which the possessor knows or has reason to know that children are likely to trespass, and

(b) the condition is one of which the possessor knows or has reason to know and which he realizes or should realize will involve an unreasonable risk of death or serious bodily harm to such children and

(c) the children because of their youth do not discover the condition or realize

the risk involved in intermeddling with it or coming within the area made dangerous by it, and

(d) the utility to the possessor of maintaining the condition and the burden of eliminating the danger are slight as compared with the risk to children involved, and

(e) the possessor fails to exercise reasonable care to eliminate the danger or otherwise to protect the children.

The courts of this jurisdiction have long recognized the attractive nuisance doctrine as an exception to the general rule of landowner liability to trespassers. *Harris v. Roberson, supra; McGettigan v. National Bank,* 115 U.S.App.D.C. 384, 320 F.2d 703, *cert. denied,* 375 U.S. 943, 84 S.Ct. 348, 11 L.Ed.2d 273 (1963); *Hankins v. Southern Transportation Corp.,* 216 F.Supp. 554 (D.D. C.), *aff'd,* 117 U.S.App.D.C. 150, 326 F.2d 693 (1963). Quite some time after the doctrine had emerged as an accepted legal theory of recovery, and nine years subsequent to the publication of the first Restatement, the circuit court decided *Harris v. Roberson, supra. Harris* involved a suit brought by a boy and his father for injuries suffered when the boy fell from, and was run over by, a trailer that was being moved by defendant's truck. The issue on appeal concerned whether the trial court erred in "refusing to give a charge which embodied the 'attractive nuisance' doctrine." *Id.* 78 U.S. App.D.C. at 246, 139 F.2d at 529. The court held the doctrine inapplicable "to things which become dangerous only when adults set them in motion." *Id.* Moving railroad cars were cited as an example.[7]

In two later cases, *McGettigan v. National Bank, supra* and *Hankins v. Southern Transportation Corp., supra,* the circuit court adopted the Restatement for-

the Reorganization Act establishing the District of Columbia Court of Appeals as the highest District of Columbia Court, is not controlling, under pronouncement of the United States Supreme Court in the *Erie* case, *supra. [Id.* at 334 (emphasis in original).]

This statement survived review by the circuit court. *Luck v. Baltimore & Ohio R. Co., supra.*

7. The court's illustrative statement as to railroad cars is undeniably dictum. However, the general principle announced in connection with the statement is nonetheless valid, and reason tells us, applicable, in a case involving a train being operated in a normal fashion.

mulation of the attractive nuisance doctrine. These two cases cannot, however, be viewed as in any way superseding or overruling *Harris*, since *Harris* is neither a formulation nor a statement of the attractive nuisance doctrine. Rather, *Harris* merely acknowledges one universally endorsed restriction on the doctrine: its inapplicability to injuries from normally operated moving vehicles, including ordinary moving railroad traffic. *See* Annot., 35 A.L.R.3d 91 (1971).

### III.

A well-settled principle of the law is that the general rule applies in a given case unless and until an exception can be shown to be applicable. Jurisdictions which have adopted the Restatement formulation adhere to the general rule and hold that § 339, as an exception to the general rule of landowner liability to trespassers, is to be strictly applied, and only when all five elements of the section are satisfied. *Joslin v. Southern Pacific Co.*, 189 Cal.App.2d 382, 11 Cal. Rptr. 267 (1963); *see also* 65 C.J.S. *Negligence* § 63(90) (1966) (citing cases from ten jurisdictions). Here, unless and until the attractive nuisance doctrine can be shown to be an appropriate, applicable exception, the general rule regarding trespassers announced in *Firfer* applies.

The overwhelming weight of authority in jurisdictions across the country is that the attractive nuisance exception does not apply as a matter of law in cases where child trespassers are injured by moving trains. *Seifereth v. St. Louis Southwestern R. Co.*, 368 F.2d 153 (7th Cir.1966), *cert. denied*, 386 U.S. 983, 87 S.Ct. 1288, 18 L.Ed.2d 231 (1967); *Nolley v. Chicago, M. St. P. & P.R. Co.*, 183 F.2d 566 (8th Cir.1950), *cert. denied*, 340 U.S. 913, 71 S.Ct. 284, 95 L.Ed. 660 (1951); *Catlett v. St. Louis, I.M. & S.Ry. Co.*, 57 Ark. 461, 21 S.W. 1062 (1893); *Joslin v. Southern Pacific Co., supra; Herrera v. Southern Pacific Ry. Co.*, 188 Cal.App.2d 441, 10 Cal.Rptr. 575 (1961); *Ashworth v.*

*Southern Ry. Co.*, 116 Ga. 635, 43 S.E. 36 (1902); *Underwood v. Western & A.R. Co.*, 105 Ga. 48, 31 S.E. 123 (1898); *Davis v. Keller*, 85 Ind.App. 9, 150 N.E. 70 (1926); *Louisville & Nashville R.R. Co. v. Spence's Adm'r.*, 282 S.W.2d 826 (Ky.1955); *Swartwood's Guardian v. Louisville & N.R. Co.*, 129 Ky. 247, 111 S.W. 305 (1908); *Costa v. Illinois Cent. R. Co.*, 137 La. 682, 69 So. 93 (1915); *Berg v. Duluth, S.S. & A. Ry. Co.*, 111 Minn. 305, 126 N.W. 1093 (1910); *Smith v. Illinois Cent. R. Co.*, 214 Miss. 293, 58 So.2d 812 (1952); *Barney v. Hannibal & St. J.R. Co.*, 126 Mo. 372, 28 S.W. 1069 (1894); *Nixon v. Montana, W. & S.Ry. Co.*, 50 Mont. 95, 145 P. 8 (1914); *Kaproli v. Central R. of New Jersey*, 105 N.J.L. 225, 143 A. 343 (1928); *Steele v. Pittsburgh, C., C. & St. L. R. Co.*, 4 Ohio Dec. 350 (1895); *George v. Texas & New Orleans R.R. Co.*, 290 S.W.2d 264 (Tex.Civ.App.1956); *Smalley v. Rio Grande Western Ry. Co.*, 34 Utah 423, 98 P. 311 (1908). To say that this general rule is also applicable in the District by virtue of *Harris* is to state the obvious.[8]

An independent analysis of § 339 leads to the conclusion reached by courts in other jurisdictions which have adopted the Restatement formulations—that accidents involving moving trains fall outside the scope of § 339 because element (c) of the formulation cannot be satisfied. Element (c) of § 339 requires that "children because of their youth do not discover the condition or realize the risk involved in intermeddling with it or coming within the area made dangerous by it." Appellant's complaint, in alleging that a nine-year-old child on the railroad right-of-way did not realize the danger inherent in coming within an area made dangerous by approaching freight trains, is deficient as a matter of law. In construing element (c) and concluding that § 339 is inapplicable in moving train situations, the California Court of Appeals persuasively reasoned that

---

8. Jurisdictions which have addressed the issue under formulations of the attractive nuisance doctrine other than the Restatement, have held the doctrine inapplicable in moving train situations. *Union Ry. v. Williams*, 187 F.2d 489 (6th Cir.1951); *Smith v. Illinois Central R.R., supra; George v. Texas & N.O.R.R., supra; Jones v. Louisville & N.R. Co.*, 297 Ky. 197, 179 S.W.2d 874 (1944).

[n]othing could be more pregnant with warning of danger than the noise and appearance of a huge, rumbling string of railroad cars. It cannot be compared with the silent, deadly danger of high-power electricity, the inanimate attraction of stationary machines, traps or turntables, loose boards, unseen pitfalls, or the still, inviting depths of a swimming pool to a tiny child. [*Herrara v. Southern Pacific Ry. Co., supra,* 188 Cal. App.2d at 449, 10 Cal.Rptr. at 580.]

There are certain obvious conditions which trespassing children can be expected to understand as a matter of law.[9] In such cases "the possessor is free to rely upon the assumption that any child of sufficient age to be allowed at large by his parents, and so to be at all likely to trespass, will appreciate the danger and avoid it, or at least make his own intelligent and responsible choice." W. Prosser, Law of Torts, *supra,* § 59 at 371.[10] Prosser reveals that this assumption has very often been applied in cases involving moving vehicles. *Id.* In the instant case, as a matter of law, element (c) of the rule is not met since a moving train is a danger so obvious that any nine-year-old child allowed at large would readily discover it and realize the risk involved in coming within the area made dangerous by it. *Joslin v.*

*Southern Pacific Co., supra; Herrara v. Southern Pacific Ry. Co., supra.*[11]

## IV

■ Dismissal for failure to state a claim upon which relief can be granted "is impermissible 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief,' *Conley v. Gibson,* 355 U.S. 41, 45, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957) . . . ." *Owens v. Tiber Island Condominium Association,* D.C.App., 373 A.2d 890, 893 (1977). The complaint was properly dismissed as to B & O because of the failure to allege an intentional, willful or wanton injury. *Firfer v. United States, supra.*

The granting of summary judgment to Penn Central was likewise correct. The same law being applicable and there being no issues of fact pertinent to the ruling, Penn Central was entitled to judgment as a matter of law. *See International Underwriter's Inc. v. Boyle,* D.C.App., 365 A.2d 779, 789 (1976).

The orders granting dismissal of the complaint as against B & O, and summary judgment for Penn Central, are

*Affirmed.*

9. The Restatement (Second) of Torts, Appendix at R134 (1966), cites two moving train cases as examples of obvious dangers, exempt from the rule. They are *George v. Texas New Orleans R.R. Co., supra,* and *Jones v. Louisville & N.R. Co., supra.*

10. We note that the record properly before the trial court in connection with the Penn Central motion reflects that the nine-year-old appellant stated that he realized the dangerousness of the tracks.

11. It is unnecessary to consider whether other elements of the Restatement formulation would operate independently of element (c) to exclude this case from applicability of the attractive nuisance doctrine. However, we note that the courts have consistently held that in the absence of statutory requirements railroads are generally under no duty to erect fences or maintain other safeguards, and that, therefore, allegations such as that made by appellant do not satisfy the requirements of the Restatement rule. *Dugan v. Pennsylvania R.R. Co.,* 387 Pa. 25, 127 A.2d 343 (1956), *cert. denied,* 353 U.S.

946, 77 S.Ct. 825, 1 L.Ed.2d 856 (1957); *Kline v. New York, New Haven & Hartford R. Co.,* 160 Conn. 187, 276 A.2d 890 (1970); *Nolley v. Chicago, M., St. P. & P. R. Co., supra.* See also *Blaauw v. Grand Trunk Western R. Co.,* 333 F.2d 540 (7th Cir.1964), *vacated and remanded,* 380 U.S. 127, 85 S.Ct. 806, 13 L.Ed.2d 792 (1965), for reconsideration in light of *American Nat'l Bank & Trust Co. v. Pennsylvania R. Co.,* 52 Ill.App.2d 406, 202 N.E.2d 79 (1964), *aff'd,* 35 Ill.2d 145, 219 N.E.2d 529 (1966), *cert. denied,* 385 U.S. 1035, 87 S.Ct. 777, 17 L.Ed.2d 683 (1967); *Union Ry. Co. v. Williams,* 187 F.2d 489 (6th Cir.), *cert. denied,* 342 U.S. 839, 72 S.Ct. 65, 96 L.Ed. 634 (1951); *Joslin v. Southern Pacific Co., supra; Herrera v. Southern Pacific Ry. Co., supra; Briney v. Illinois Cent. R. Co.,* 324 Ill.App. 375, 58 N.E.2d 286 (1944); *Davis v. Keller, supra; Mugford v. Boston & M.R. Co.,* 173 Mass. 10, 52 N.E. 1078 (1899); *Giles v. Missouri Pac. Ry. Co.,* 169 Mo.App. 24, 154 S.W. 852 (1913); *Barney v. Hannibal & St. J.R. Co., supra; Nixon v. Montana, W. & S. Ry. Co., supra.*

FERREN, Associate Judge, with whom KELLY and MACK, Associate Judges, concur, dissenting.

The majority opinion can be summarized in one sentence: Because *all* children should know better than to go near trains, and because the costs of more carefully safeguarding a right-of-way in *any* location will always be too great to impose on a railroad, *no* child trespasser can ever recover for injuries caused by a moving train in the District of Columbia (absent willful, wanton, or reckless conduct by the railroad). That is an extreme holding. I strongly disagree.

## I.

It may be true that most trespassing children hit by moving trains should have known better than to get in the way. The majority, however, forges that statistical likelihood into an absolute rule: *every* child "allowed at large," *ante* at 603, should be deemed as a matter of law to "realize the risk involved in intermeddling with . . . or coming within the area made dangerous by" a moving train. Restatement (Second) of Torts § 339 (c) (1965). That is nonsense.

Not every child at large, to a certainty, will appreciate the danger of a train in every setting. *See Beard v. Atchison, Topeka and Santa Fe Railway Co.,* 4 Cal. App.3d 129, 130, 139, 84 Cal.Rptr. 449, 456 (1970). There are obvious differences between the perceptions of six-year-olds, *see Luck v. Baltimore & Ohio Railroad Co.,* 116 U.S.App.D.C. 283, 284, 510 F.2d 663, 664 (1975), and 14-year-olds. *See Gutirrez v. Southern Pacific Company,* 174 Cal.App.2d 866, 870, 345 P.2d 326, 328 (1959). There also are relevant differences in mental capacity. *Compare Gutirrez, supra* (14-year-old boy of apparently average intelligence should have appreciated the risk) *with Dickeson v. Baltimore & Ohio Chicago Terminal R.R. Co.,* 73 Ill.App.2d 5, 21–22, 220 N.E.2d 43, 49–50 (1965) (I.Q. test admissible to show 14-year-old boy was of below average intelligence and therefore had less capacity to appreciate danger), *aff'd,* 42 Ill.2d 103, 245 N.E.2d 762 (1969). Finally, "slow moving trains might well appear safe to a child, where the same child would be aware of the dangers of a fast moving train." *Dickeson, supra* at 24, 220 N.E.2d at 51. The majority, therefore, is altogether arbitrary in holding, as a matter of law, that "a moving train is a danger so obvious that any nine-year-old child allowed at large would readily discover it and realize the risk involved in .coming within the area made dangerous by it." *Ante* at 603.

The majority also states that allegations of a railroad's failure "to erect fences or maintain other safeguards . . . do not satisfy the requirements of the restatement rule," meaning, I assume § 339(d). *Ante* at 603 n.11. Again, the majority states an absolute: Whatever the location along the right-of-way, "the risk to the children involved," Restatement, *supra* § 339(d), can *never* outweigh the cost to the railroad of providing additional protection against injury from oncoming trains.

It may be true that in many if not most locations the addition of warning signals or fences—or even patrols by railroad personnel—would do little to cut down the risks while costing a prohibitive sum. *See, e. g., Nolley v. Chicago, M., St. P. & P.R. Co.,* 183 F.2d 566, 569–70 (8th Cir.1950) (applying Minnesota law) (fences or patrols), *cert. denied,* 340 U.S. 913, 71 S.Ct. 284, 95 L.Ed. 660 (1951); *Dugan v. Pennsylvania R.R. Co.,* 387 Pa. 25, 38, 127 A.2d 343, 349 (1956) (patrols), *cert. denied,* 353 U.S. 946, 77 S.Ct. 825, 1 L.Ed.2d 856 (1957). But there are still other locations where the value of additional safeguards might outweigh the costs of installing them. For example children can stand "on the railroad tracks near their home in a congested area of Northeast Washington." *Luck, supra* 166 U.S.App. D.C. at 284, 510 F.2d at 664; *see Dickeson, supra* 73 Ill.App.2d at 23, 220 N.E.2d at 51 ("children *habitually* were on the tracks. This was a congested area with few recreational facilities."). The majority is much too rigid in refusing to admit there may be certain locations where, at minimal cost, the railroad significantly can reduce the risk to children—or even locations where a substantial cost may be warranted in view of a particularly high risk.

I therefore dissent for one, simple reason: I do not understand why each case concerning a child trespasser and a railroad should not be decided on its facts under Restatement, *supra* § 339, just like every other personal injury case, leaving it to the trial court to grant summary judgment, direct a verdict, or enter judgment notwithstanding the verdict whenever the facts assuredly favor the railroad. *See, e. g., Nolley, supra* at 569 (citing § 339(d), the court affirmed a directed verdict where "no fence, other than a wholly insurmountable one, like a castle wall, would have served to keep plaintiff off the right-of-way," for already he had crawled over guarding fences); *Alston v. Baltimore & Ohio Railroad Co.*, 433 F.Supp. 553 (D.D.C.1977) (citing § 339(c), the court granted judgment n.o.v. when the facts showed conclusively that the child had hopped trains on numerous occasions and therefore fully appreciated the risk).

It is interesting to note that the American Law Institute comments amplifying § 339 do not call for an automatic railroad exemption. To the contrary, injuries from trains require an ad hoc analysis.

> Under some circumstances, a warning to the children is all that can be expected of a reasonable man in the defendant's position. There are some conditions, such as those of moving cars in a railroad yard, as to which no really effective precautions can be taken to make the condition itself safe, and the most that can be done as a practical matter is to warn trespassing children, and so far as is reasonably possible to exclude them. If the children are of sufficient age to understand a warning, it may often reasonably be expected that they will heed it, and will avoid the danger. Where, however, the child is too young to be expected to understand or heed the warning, something more may be required. [Restatement, *supra* § 339, Comment o.]

## II

What has happened, I think, is this:

1. My colleagues have collected primarily two categories of cases: (a) older ones which say that moving trains cannot be attractive nuisances (these either predate or ignore § 339), and (b) newer ones which carefully apply § 339 to the facts.

2. They have noted that the railroads usually win.

3. They then have decided that this statistical success rate should be generalized into an absolute rule of law, apparently to save the railroads and the courts the trouble of dealing with claims which the majority believe have little chance to prevail.

4. They have rationalized this absolutism by relying primarily on pre-§ 1339 cases for the proposition that a child trespasser on a train track can never satisfy § 339(c) and (d) —despite the fact that the authors of the Restatement, *supra*, as well as the courts relying on it, have said that § 339 applies case by case, criterion by criterion, to *all* "artificial conditions" upon the land "highly dangerous to trespassing children," *id.* § 339, including trains.

The majority result is therefore a policy decision about the liability of a particular industry—a legislative decision—in derogation of the court's traditional responsibility to apply common law doctrine to the facts of each case. It is obviously proper for a court to acknowledge or adopt general standards of liability, such as the "willful-wanton-reckless" standard generally applicable to trespassers. It is also perfectly proper for the court to refine the standards applicable to traditional subclasses, such as the § 339 exception for child trespassers. I have considerable difficulty, however, in understanding the creation of a railroad exemption from the general applicability of a standard of tort law. It would be more candid for the majority to say that § 339 applies to all artificial conditions upon land except moving trains, which this court exempts by reference to older law for policy reasons. This, after all, is what the majority is doing.

It may be true, based on cases cited by the majority, that § 339, when applied to

the facts of particular cases, will yield few plaintiffs' verdicts against the railroads. But this very likelihood demonstrates that § 339 generally works the way the majority thinks it should; it is no excuse for taking away the cause of action absolutely (absent willful, wanton, or reckless conduct). A decision of that sort—if desirable—is for the District Council.[1]

The District of Columbia is a densely populated jurisdiction; railroads can antici-

pate children near rights-of-way in a number of places. *See Luck, supra.* Given the fact that § 339 already affords substantial protection to the railroads,[2] it is a serious mistake for this court, in its extreme ruling today, to create a disincentive for even minimal safeguards along the rights-of-way. Accordingly, I would hold that the trial court improperly granted B & O's motion to dismiss. I would reverse and remand that case for further proceedings.[3]

1. The California legislature did just that. In 1971 it enacted legislation protecting railroads against liability to trespassers upon trains. *See* Cal.Civ.Code, § 1714.7 (West); *cf. Durham v. City of Los Angeles,* 91 Cal.App.3d 567, 573, 154 Cal.Rptr. 243, 246 (1979) (upholding statute). *See also* Mass.Gen.Laws Ann. ch. 229, § 2 (West Cum.Supp.1980) (railroad not liable in wrongful death for negligence where decedent violated rules of carrier).

2. It is important to keep in mind that ad hoc application of § 339 is not equivalent to evaluating child trespasser cases under the standard of "reasonable care to be exercised under all the circumstances," *Blumenthal v. Cairo Hotel Corp.,* D.C.App., 256 A.2d 400, 402 (1969), which this court applies to invitees. *See D.C. Transit System, Inc. v. Carney,* D.C.App., 254 A.2d 402 (1969). Because of *Firfer v. United States,* 93 U.S.App.D.C. 216, 219, 208 F.2d 524, 528 (1953), there is a presumption that a trespasser assumes the risk of coming onto the property. That presumption, of course, is conclusive as to an adult, whereas it is rebuttable by a child. A child, however, has the burden to prove under § 339(c) that he did *not* appreciate (and thus assume) the risk in coming onto the property. *Beard, supra,* 4 Cal.App.3d at 136, 84 Cal.Rptr. at 454. Similarly, the child has the burden under § 339(d) and (e) to prove the feasibility of eliminating the danger or otherwise protecting children. *Id.* Accordingly, even though a child trespasser is not automatically barred from recovery, he must, because of *Firfer, supra,* carry a burden of proof which an invitee would not.

The situation would be different, of course, if we were to abandon *Firfer, supra,* in favor of a single standard of reasonable care under circumstances. See *Blumenthal, supra* at 402; *Carney, supra,* at 403; *Smith v. Arbaugh's Restaurant, Inc.,* 152 U.S.App.D.C. 86, 96, 469 F.2d 97, 107 (1972), *cert. denied,* 412 U.S. 939, 93 S.Ct. 2774, 37 L.Ed.2d 399 (1973); *Rowland v. Christian,* 69 Cal.2d 108, 117, 70 Cal.Rptr. 97, 104, 443 P.2d 561, 568 (1968) (en banc); *Mile High Fence Co. v. Radovich,* 175 Colo. 537, 548, 489 P.2d 308, 314 (1971) (en banc); *Pickard v. City & County of Honolulu,* 51 Haw. 134, 135, 452 P.2d 445, 446 (1969); *Ouellette v. Blanch-*

*ard,* 116 N.H. 552, 557, 364 A.2d 631, 634 (1976); *Basso v. Miller,* 40 N.Y.2d 233, 241, 386 N.Y.S.2d 564–568, 352 N.E.2d 868, 872 (1976); *Mariorenzi v. Joseph DiPonte, Inc.,* 114 R.I. 294, 307, 333 A.2d 127, 133 (1975). *See generally* Comment, *The Common Law Tort Liability of Owners and Occupiers of Land: A Trap for the Unwary,* 36 Md.L.Rev. 816 (1977).

I am reluctant to reconsider *Firfer, supra,* until we are presented a more typical case, perhaps involving an adult trespasser. *See Soule v. Massachusetts Electric Co.,* Mass., 390 N.E.2d 716, 721 (1979).

3. Penn Central's situation is different. I would affirm the grant of summary judgment. Appellants did not file a Rule 12–I(k) statement controverting Penn Central's statement of material facts or setting forth any other genuine issue of material fact. It is therefore undisputed that appellant's injury occurred on the B & O right-of-way and was not caused by a Penn Central train. Thus, the only possible basis for Penn Central liability would be a breach of duty to help protect child trespassers against injury from a B & O train (or any other train) on B & O property contiguous to Penn Central tracks where appellant may have been playing.

Given six contiguous, parallel tracks—three B & O, then three Penn Central—it would be logical to conclude that any duty to child trespassers should be the railroads' joint responsibility. Absent a barrier between parallel track properties, it is arguably as foreseeable that a child with easy access to Penn Central tracks will be injured by a B & O train a few yards away as it is that a Penn Central train will strike the child. On the other hand, the law is well established, at least in other contexts, that a possessor of land does not have a duty to protect someone on his property against a dangerous condition on adjacent property—for example, by fencing. *Cousins v. Yaeger,* 394 F.Supp. 595, 604–05 (E.D.Pa.1975); *Villani v. Wilmington Housing Authority,* 48 Del. 450, 453, 106 A.2d 211, 213 (1954); *Corcoran v. City of San Mateo,* 122 Cal.App.2d 355, 358, 265 P.2d 102, 104 (1953); *see Jones v. United States,* 241 F.2d 26, 28–29 (4th Cir.1957). A California appellate court, in fact, has acknowl-

edged this rule in the present context, though without much elaboration, noting that a railroad did not have a duty to protect against injury on the nearby track of another. *Gutirrez, supra* 174 Cal.App.2d at 870–71, 345 P.2d at 328.

I would not find such a duty here, for it would require standards especially difficult to formulate and apply. In the first place, assuming a potential joint duty, it is not clear how to define and evaluate whether the two railroads' tracks are physically so close to one another that one railroad could not, as a practical matter, be expected to bear responsibility alone for protecting wayward children against entry. Second, the implications of one railroad's refusing to cooperate are unclear. Third, proximate cause problems would be compounded by the possibility that one railroad would face liability for injury to a child by another railroad on the other's own right-of-way.